HANNIBAL P. WOOD *vs.* MADISON SCOTT.

In order to show that the words, " he has sworn false," were spoken in such a sense as to convey a slanderous imputation, it is necessary the declaration should contain averments of a court and cause pending, a trial and testimony given by the plaintiff, and that the defendant spoke the words in a conversation, or *colloquium*, had concerning the plaintiff's testimony, so given, and that he thereby intended to charge the plaintiff with having committed the crime of perjury, or with having sworn falsely, knowingly and corruptly.

The innuendo, in such case, is indispensable and its want is not cured by verdict.

But if defendant justify the speaking of- the words, by pleading in bar, alleging that plaintiff did, in his testimony, &c. commit wilful and corrupt perjury, and issue be joined upon this plea, and a verdict pass for the plaintiff, this will cure that defect in the declaration; and judgment will pass upon such verdict.

THIS was an action on the case for slanderous words, in seven counts.

The defendant pleaded not guilty, and a special plea in bar. The substance of the special plea sufficiently appears from the opinion of the court. · Issues were joined to the country.

After a general verdict for the plaintiff, in the county court, the defendant moved an arrest of judgment for the insufficiency of the declaration. The county court overruled the motion and rendered a judgment for the plaintiff, and the defendant excepted to the decision.

The first count in the declaration, is as follows :—

" The said Hannibal P. Wood declares against the said Madison Scott, in a plea of trespass on the case, for that whereas, the said Hannibal is now a good, true, honest, just and faithful citizen of the state of Vermont, and as such has always behaved and conducted himself, and until the committing of the several grievances by the said Madison, as herein after mentioned, was always reputed, esteemed and accepted by all his neighbors, and other good and worthy citizens of this state, to whom he was in any wise known, to be a person of good name, fame, and credit, to wit, at Westford, in said county of Chittenden. And, whereas, also, the said Hannibal hath not ever been guilty, or until the time of the committing of the said several grievances, by the

said Madison, as hereinafter mentioned, been suspected to
have been guilty of perjury, or any other such crime, by means
of which said premises, he, the said Hannibal, before the
committing of the several grievances by the said Madison, as
hereinafter mentioned, had deservedly obtained the good
opinion and credit of all his neighbors, and other good and
worthy citizens of this state, to whom he was in any wise
known, to wit, at Westford aforesaid. And whereas, also,
before the committing of the several grievances by the said
Madison, as in the several counts hereinafter mentioned, a
certain action had been depending before Danforth Wales,
Esq. justice of the peace within and for the county of Chit-
tenden, in which cause one James Nichols was plaintiff and
the said Madison Scott was defendant, and which said ac-
tion had been then lately tried before said justice Wales,
and, on such trial, the said Hannibal had been, and was ex-
amined on oath, and had given his evidence as a witness for
and on the part of the said James Nichols, to wit, at West-
ford aforesaid. Yet the said Madison, well knowing the
premises, but greatly envying the happy state and condition
of the said Hannibal, and contriving, and wickedly and
maliciously intending to injure the said Hannibal in his good
name, fame and credit, and to bring him into public scan-
dal, infamy and disgrace, with and amongst all his neigh-
bors and other good and worthy citizens of this state, and
to cause it to be suspected and believed, by those neighbors
and citizens, that he, the said Hannibal, had been and was
guilty of perjury, and to subject him to the pains and pen-
alties by the law of this state made and provided against and
inflicted upon persons guilty thereof, and to vex, harrass,
oppress, impoverish, and wholly ruin him, the said Hanni-
bal, heretofore, to wit, on the 17th day of August, 1838, at
Westford aforesaid, in a certain discourse which he the said
Madison then and there had with the said Hannibal, of and
concerning him the said Hannibal, in the presence and hear-
ing of divers good and worthy citizens of this state, then and
there, in the presence and hearing of the said last mentioned
citizens, falsely and maliciously spoke and published of and
concerning the said Hannibal, and of and concerning the
said action so tried, before the said justice, as aforesaid, and
of and concerning the said evidence so given by him, the

said Hannibal, as aforesaid, the false, scandalous, malicious, and defamatory words, following: that is to say: "you, (meaning the said Hannibal P. Wood,) have sworn false as hell, and you, (meaning the said Hannibal P. Wood) know it."

3d. count.—" And, afterwards, to wit, on the 17th of August, 1838, at Westford aforesaid, in a certain other discourse, which he, the said Madison, then and there had in the presence and hearing of divers other good and worthy citizens of this state, he, the said Madison, contriving and intending, as aforesaid, then and there in the presence and hearing of the said last mentioned citizens, falsely and maliciously spoke and published of and concerning the said Hannibal, and of and concerning the said action, and of and concerning the evidence by him, the said Hannibal, given on said trial, as such witness as aforesaid, these other false, scandalous, malicious and defamatory words, following, that is to say: he (meaning the said Hannibal) has sworn false."

4th. count.—" And, afterwards, to wit, on the same 17th day of August aforesaid, at Westford aforesaid, in a certain other discourse which he, the said Madison Scott, then and there had to and with the said Hannibal, and in the presence and hearing of other good and worthy citizens, he, the said Madison, further contriving and intending as aforesaid, then and there, in the hearing of the said last mentioned citizens, falsely and maliciously spoke and published of and concerning the said Hannibal, and of and concerning the said action, and of and concerning the said evidence, by him, the said Hannibal, given on the said trial as such witness, as aforesaid, these other false, scandalous, malicious, defamatory words, following, that is to say: you, (meaning said Hannibal) have sworn false."

5th. count.—" And, afterwards, to wit, on the 20th day of August, 1838, at Westford aforesaid, in a certain other discourse, which the said Madison Scott then and there had, in the presence and hearing of one James Nichols, and a large number of good and worthy citizens of this state, he, the said Madison, further contriving and intending as aforesaid, then and there, in the hearing of the said last mentioned citizens falsely and maliciously spoke and published of and concerning the said Hannibal, and of and concerning the said action, and of and concerning the evidence given by him, the said Hannibal, on the said trial as such witness, as afore-

said, these other false, scandalous, malicious and defamatory words following, that is to say: you, (meaning the said James Nichols and Wood) (meaning the said Hannibal P. Wood) both swore false, and they, (meaning the said Wood and Nichols) knew it."

6th. count.—" And, afterwards, to wit, on the 20th day of August aforesaid, at Westford aforesaid, in a certain other discourse, which the said Madison then and there had in the presence and hearing of one William Parker, and a large number of good and worthy citizens of this state, he, the said Madison, further contriving and intending as aforesaid, then and there, in the hearing of the said last mentioned citizens, falsely and maliciously spoke and published of and concerning the said Hannibal P. Wood, and of and concerning the said action, and of and concerning the evidence by him, the said Hannibal, given on said trial, as such witness as aforesaid, these other false, scandalous, malicious and defamatory words, following, that is to say : he, (meaning the said Hannibal) will swear as Nichols directs him, and he, (meaning the said Wood) did swear false, and I, (meaning the said Madison) can prove it."

7th. count.—" And afterwards, to wit, on the same 20th day of August aforesaid, in a certain other discourse, which the said Madison then and there had of and concerning the said Hannibal, in the presence and hearing of divers good and worthy citizens of this state, he, the said Madison, further contriving and intending as aforesaid, then and there, in the hearing of the said last mentioned citizens, falsely and maliciously spoke and published of and concerning the said Hannibal, amongst other things, these false, scandalous, malicious and defamatory words, as follows, that is to say : he, (meaning the said Hannibal) is perjured.

" By means of the committing of which said several grievances by the said Madison, as aforesaid, he, the said Hannibal, hath been and is greatly injured in his said good name, fame and credit, and brought into public scandal, infamy and disgrace, with and amongst all his neighbors, and other good and worthy citizens of this state," &c.

*A. G. Whitemore and Maeck & Smalley,* for defendant.

The third count in the declaration is bad, because it is al-

CHITTENDEN, leged that Scott uttered and published that " *he has sworn*
January, *false*," without any *innuendo,* imputing that the testimony
1841.
was wilfully and corruptly false, and this is not aided by the
Wood
*v.* colloquium. This is the case with the fourth, fifth, and sixth
Scott... counts. *Ryan* v. *Madden,* 12 Vt. Rep. 51.

The fifth count is defective for another reason. The words
charged to have been spoken by the defendant, are as fol-
lows :—" *You* have both sworn false, and *they* knew it."
This would be a charge of perjury if it had been also said,
*you knew it,* for then it might be made to mean the plain-
tiff. But the word *they* may as well apply to the by-stand-
ers as to Wood and Nichols.

The last count is bad for not stating the words to have
been uttered of and concerning the action, and the evidence
given by the plaintiff.

*Allen & Platt,* for plaintiff.

The words, in the third count, " he has sworn false," and
in the fourth count, " you have sworn false," standing in the
declaration in such connection as they do, are good and suf-
ficient to support the judgment. In both instances the aver-
ment and colloquium give the meaning of the words spoken
the full effect of a charge of perjury. Each count recites
them to have been spoken falsely and maliciously of and con-
cerning the plaintiff, the action and the evidence. 1 Chit-
ty's Pleadings, 429, margin ; *Hawkes* v. *Hawkey,* 8 East,
427. *Hopkins* v. *Beedle,* 1 Caines' Rep. 358. *Fitzsim-*
*mons* v. *Cutter,* 1 Aikens' Rep. 33. *Taft* v. *Howard,* 1
Danl. Chipman's Rep. 275. *Billings* v. *Wing,* 7 Vt. Rep.
439. 2 Chitty's Pleadings, 621.

There was no necessity of an innuendo in either count, or
an addition of the words " meaning he the said Hannibal
perjured himself." If the words, " he swore false," coupled
as they are with the averment and colloquium of the declara-
tion, are not sufficient without, they are not sufficient with
an innuendo. An innuendo cannot enlarge that which
has been previously alleged. It is, in effect, no more than
a *predicta,* and cannot make that certain which was uncer-
tain. And where previous allegations are pointed and dis-
tinct, an inuendo shall be rejected as surplupage and be re-
pugnant and void. 1 Chitty's Pleading, 437, margin. *Van*

*Vetchen* v. *Hopkins*, 5 Johns. Rep. 211. 2 Selwin's Nisi Prius, 435. Jacob's Law Dictionary, I. N. Q.

The opinion of the court was delivered by

REDFIELD, J.—It is now too well settled to be again brought in question, that, where one of the counts in a declaration is defective, and the verdict general, judgment will be arrested. *Haselton* v. *Weare*, 8 Vt· R. 480.

Lord Mansfield expressed regret, that such a rule had been established, *Peake* v. *Oldham*, 1 Cowper, 275. *Grant* v. *Astle*, Doug. 722 ; and in Connecticut and South Carolina, the courts have departed from the rule. *Wolcott* v. *Coleman*, 2 Conn. 324. *Neal* v. *Lewis*, 2 Bay, 204. In Virginia the legislature have interfered to abolish the rule. If the mere *form* of judicial proceedure is ever to be changed by the legislature, this might be deemed a just occasion.

There are, in the present case, proper introductory averments of a court, cause pending, issue joined, and that plaintiff gave testimony, and a colloquium of the testimony so given by plaintiff, or that the words were spoken of and concerning the plaintiff and his testimony so given. This is true of all the counts, except the last, which is a direct charge of the crime of perjury, and requires no colloquium or innuendo. *Hopkins* v. *Beedle*, 1 Caines' Rep. 347. 2 *Ib*. 91.

We consider the fifth count good. The words are, you, (meaning Nichols, and Wood the plaintiff,) both swore false, and they (meaning the same persons) knew it. These words, taken with reference to the introductory averments and the colloquium, do necessarily imply a charge of perjury. The court cannot, without a forced construction, suppose the testimony was given upon an immaterial point, which seems to be almost the only mode of escaping the inference, that perjury had been committed by the plaintiff. This point has been, in effect, repeatly decided. *Holt* vs. *Scholefield*, 6 Term R. 691. *Pelton* v. *Ward*, 3 Caines' R. 73.

But the third count seems to us to be more defective. The words are, after the proper averments and colloquium, "he, (meaning the plaintiff) has swore false." There is no innuendo connecting the words with the precedent averments and defining in what sense the defendant used them, how he was in fact understood by others, or how he intended to be un-

CHITTENDEN,
January.
1841.

Wood
v.
Scott.

derstood. The words themselves, in connexion with all the antecedent averments, fairly imply nothing more than, that in a regular judicial proceeding on a material point, the plaintiff had sworn to what was not true. Now this might be perjury or it might not. The words are, at most, equivocal. It is the proper office of the innuendo to determine in what sense the words were connected with the antecedent matter. Whether the words were meant to convey one or the other of two significations, for either of which they are equally adapted. All the precedents, which I have consulted, have the innuendo or averment, " thereby meaning that the plaintiff had committed wilful and corrupt perjury." I take it this is the proper office of an inuendo. It is true the innuendo will avail nothing without the antecedent averments. There must be first the averments of the cause, the court, the trial, the testimony given, then the colloquium of and concerning that testimony so given by the plaintiff, and then, unless the words, in themselves, and in connexion with the precedent matter in the declaration, necessarily imply the charge of perjury, there must be the averment or innuendo, that the defendant used them in that sense. 1 Chitty's Pl. 483.

In the case of *Hawkes* v. *Hawkey*, 8 East, 427, the declaration did contain the introductory averments, except that the words were spoken of and concerning the testimony so given by plaintiff, and the judgment was arrested for that defect, notwithstanding the proper innuendo. Since the time of Braham's case, 4 Coke's Rep. 20, it has uniformly been held, that the innuendo, without the antecedent averments and the colloquium, will not avail to extend the natural import of the terms. There are some of the cases, and especially those decided while the courts adhered to the interpretation of the words, *in mitiori sensu*, which seem in effect to deny all use to an innuendo. James' case, 4 Coke's R. 17, is of this character. But since it has been settled, that in actions of slander, courts of law are to understand words as the rest of mankind do, and that a man cannot " *slander* in one sense, and *defend* himself in another sense of the same words," the proper office of an innuendo is to determine in what sense the words are used, and this usually, perhaps always, with reference to some antecedent al-

legations in the declaration. This point is expressly ruled in the case of *Oldham* v. *Peake*, 2 Wm. Black. R. 959. It was there held that an innuendo might determine that the word " death " was used in the sense of " murder." The word *death* being equivocal, the innuendo became necessary to show in what sense it was used by defendant, and the jury must determine whether the defendant did in fact use it in that sense. In the same case, on error in the King's Bench, 1 Cowper, 275, Lord Mansfield expresses himself to the same effect. The truth of the averments and innuendos are material. On demurrer they are conceded to be true, and on trial are to be found by the jury. *King* v. *Horne*, 2 Cowper, 672. *Van Vechten* v. *Hopkins*, 5 Johns. R. 211. But, unless these averments be placed upon the record, the jury could never be required to inquire into their truth. Ch. J. De Grey, in *King* v. *Horne*. *Roberts* v. *Camden*, 9 East, 93. We think, therefore, that it was necessary to aver in what sense the defendant used the words, which not being done, the jury were not required to inquire, under the general issue, in what sense they were spoken, and from their finding on that issue, it cannot now be determined in what sense the defendant did speak them.

This subject might be further illustrated by the cases where slander has been alleged to have been communicated in a foreign language. It must there be averred that the persons to whom it was addressed understood the language, and also what is the import of the words used, all which averments are to be proved to the jury under the general issue. The same is true where slander is alleged to have been conveyed in *cant* or *flash* language, as it is termed among the initiated. This is a kind of dialect invented by desperadoes and idlers in order to communicate with each other in secrecy. To say of one, that he had a " boodle," which he intended to distribute, might be slander, or not, as the word *boodle* was used to signify a bundle of counterfeit money, or a bundle of idle gossip, or any other false and simulated matter. If this verdict had passed upon the general issue alone, judgment must have been arrested.

But, when a case comes here on exceptions, the entire record is before this court, and it is our duty to look into that record. We there find that the defendant pleaded in bar the

truth of the words spoken, and therein defined the sense in which he used them. He there says that the plaintiff, in his testimony on the occasion set forth in the declaration, "had knowingly and wilfully sworn false, thereby committing wilful and corrupt perjury, and therefore he spoke the words, as well he might." This is an unequivocal admission by the defendant of the sense in which he spoke the words, by him placed upon the record, and has been often held sufficient to cure the defect of the want of a colloquium, much more of the want of an innuendo. *Vaughn* v. *Havens*, 8 Johns. R. 84. *Drake* v. *Corderoy*, Cro. Chas. 288. The result is, therefore, that the judgment of the county court, upon the whole record, was correct, and that judgment is affirmed.