SUSAN D. WHITCOMB v. JOHN WOLCOTT.

Attentions, merely, on the part of an unmarried man to an unmarried woman, do not constitute a marriage contract; and the mere fact, that they are long continued, or that the neighbors suppose such a contract must exist, adds nothing to their intrinsic weight. But evidence of mere attentions is always admissible upon trials for a breach of contract of marriage, and its weight and effect is to be determined by the jury.

Where, in a declaration founded upon a breach of a contract of marriage, there were several counts, and one count was defective, in not alleging a promise on the part of the plaintiff, and the jury returned a general verdict for the plaintiff, but it appeared, from the judge's minutes taken upon the trial in the court below, that the defective count was not read to the jury, but only counts which were confessedly good, and that the jury, by the charge, were expressly directed to find the fact of a promise on the part of the plaintiff, it was held, that this court would not arrest the judgment.

ASSUMPSIT for a breach of contract of marriage. The declaration contained several counts; and in the fourth count the plaintiff declared, "For that on the first day of November, 1845, at said Stockbridge, in consideration that the plaintiff, being sole and unmarried, at the special instance and request of the defendant had then undertaken and faithfully promised the plaintiff to marry her in a reasonable time then next following," &c.—the residue of the count being in common form. Pleas, the general issue and the statute of limitations, and trial by jury, May Term, 1848,—RED-FIELD, J., presiding.

On trial the plaintiff introduced the testimony of her mother, who testified, in substance, that the defendant first began to visit her daughter sixteen or seventeen years ago, and continued his visits for more than a year;—that she could not say precisely how often he came, but as people generally do, in the way of courtship,—once in two or three weeks;—that he was generally with the plaintiff alone, but sometimes others were in the room a part of the time, or in the forepart of the evening, but that the defendant's main conversation was with the plaintiff; that he was there at her house both day and night, the plaintiff and defendant being generally in a room by themselves. She also said, upon cross examination, that these attentions continued for two years; that the defendant carried her daughter to

ride, when the young people had rides,—and she named two occasions in particular. She said farther, that these visits were understood by the plaintiff and the family to be in the way of courtship ; that her daughter expected to marry the defendant, and that the family expected she would, and in a short time, and that the plaintiff's father had accordingly procured her such articles of furniture, as he intended to give her on the occasion of her marriage ; and that the plaintiff was busily employed in making up such articles of bedding and furniture, as she would require for housekeeping. She farther testified, that during all this time her daughter received no similar attentions from any other man ;—and there was no testimony in the case tending to show, that the defendant, during this period, paid any similar attentions to any other woman. This witness farther testified, that the defendant suddenly discontinued these attentions, without assigning any reason therefor, and that from that time, for many years, the families had no correspondence, until about the month of September, 1844, when, the former coldness between the families having somewhat worn off, the defendant renewed his attentions to the plaintiff in the same manner as before,—at both periods often staying late at night in a room alone with the plaintiff, after the rest of the family had gone to rest; that the last courtship continued until November, 1845, when the defendant abandoned the plaintiff, and soon after married another woman ; that during the summer of 1845 the plaintiff expected soon to marry the defendant, and was making all the preparations in her power for housekeeping, and both the family and the plaintiff expected, that the defendant intended soon to marry the plaintiff; that on one occasion in particular, the defendant, while visiting the plaintiff, as the family considered, in the way of courtship, in the month of October, 1845,—the father and mother and the plaintiff all being present,—spoke particularly of extensive repairs he was making in his dwelling house, and inquired of the father, how he had best conduct the repairs, and to what extent, and, turning to the mother, said, " I don't know as *she* will be willing to go in there *to live* when I have got it fixed as well as I can;" to which the mother replied, " Then let her stay where she is." The witness understood at the time, and had no doubt now, that the defendant referred, by " *she* " to the plaintiff, then present, but could not say, that he used

47

the plaintiff's name. One witness also testified, that he had a conversation with the defendant in July, 1844, in which the defendant stated to him, that " he did promise to marry the plaintiff, but thought he should not just then." There was testimony to corroborate the testimony of the mother, and also testimony tending to disprove most of the facts testified to by her.

The counsel for the defendant requested the court to charge the jury,—1, That, a contract to marry, when once barred by the statute of limitations, cannot be *renewed*, so as to make the defendant liable upon the former contract ;—2, That mere attentions are not sufficient to constitute a contract of marriage, though exclusive, and long continued, and manifesting an apparently serious and settled attachment between the parties ;—That, upon all the evidence on the part of the plaintiff, the plaintiff was not entitled to a verdict.

The court charged the jury according to the first request, and declined to charge as requested in the third request ; and in regard to the second request, among other things, told the jury, that mere attentions did not constitute a promise of marriage, and that such attentions, as the defendant did or might be expected to pay to any other woman, than the one he intended to marry, or such as the plaintiff, at the time of the defendant's attentions, did or might be expected to receive from any other man, had no tendency to prove a marriage contract ; but that those exclusive, long continued and special attentions, which, in the circle in which the parties moved, were not expected to be paid by gentlemen, or received by ladies, unless during the pendency of a treaty of marriage, might be taken into the account with the other more direct evidence in the case ; and if, from all the evidence, the jury were satisfied, that the defendant did in fact promise to marry the plaintiff, and she to marry him, in the manner alleged in the declaration, and that the defendant, without excuse therefor, married another woman, the plaintiff, if this were within six years before suit brought, would be entitled to recover.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

After verdict the defendant filed a motion in arrest of judgment for insufficiency of the declaration ; which motion was overruled by the court. Exceptions by defendant.

*Washburn & Marsh* and *E. Hutchinson* for defendant.

I. By the charge of the court all the testimony as to what occurred prior to September, 1844, was excluded from the consideration of the jury. To that decision the plaintiff has not excepted. Consequently the only question is, whether the plaintiff is entitled to recover, upon *all* the evidence of facts occurring *subsequent* to that time.

To entitle the plaintiff to recover, the jury must be satisfied, from proper and sufficient evidence, that the defendant *promised* to marry her. There is no evidence of any *express* promise; and hence it follows, that the plaintiff must rely upon a promise to be *implied* from the evidence produced. Such promise can only be inferred from the *acts* and *sayings* of the *defendant*. What the plaintiff or her friends may have thought is only important, as showing a promise upon *her* part,—which is necessary to be proved. The acts and sayings of the defendant, as proved, show nothing more than *mere attentions.* What was said by the defendant to the witness in July, 1844,—that he " did promise to marry the plaintiff, but thought he should not, just then,"—is out of the case; because it was prior to the commencement of the last courtship, and referred only to the former series of attentions,—which were ruled out by the court. The case fairly raises the question, then, *whether a promise of marriage can be legally implied from mere attentions ?*

This question was directly raised, and decided in the negative, in this state, in *Munson* v. *Hastings,* 12 Vt. 346,—which was a case much stronger for the plantiff, in its facts, than the case at bar. Neither *Southard* v. *Rexford,* 6 Cow. 254, nor *Wightman* v. *Coates,* 15 Mass. 1, raised this question. In both it was held, that the defendant's promise might be implied from proper circumstances;— but in the former case it was proved, that the defendant had *acknowledged,* that he did expressly promise to marry the plaintiff;— and in the latter case letters from the defendant to the plaintiff were produced, of which the learned judge, who delivered the opinion of the court, said,—" they admit only of the alternative, that he was bound in honor and conscience to marry the plaintiff, or that he was prosecuting a deeply laid scheme of fraud and deception, with a view to seduction."

II. The fourth count in the plaintiff's declaration is fatally defective; and for that cause judgment should be arrested,—the verdict having been general upon all the counts. *Haselton* v. *Weare*, 8 Vt. 484. It is essential to the plaintiff's action, that she should both *allege* and prove a *promise* and a *consideration* for that promise. In the fourth count she has alleged neither. And this defect is not cured by verdict. Gould's Pl. 592. *Needham* v. *McAuley*, 13 Vt. 70. *Spies* v. *Parker*, 1 T. R. 145. And even if this court should think a *promise* fairly inferrible from what is stated in the fourth count, it is clear, that no *consideration* is expressed,—and that will not be intended to have been proved. *Courtney* v. *Strong*, 1 Salk. 364. *Vadakin* v. *Soper*, 1 Aik. 289. *Harding* v. *Cragie*, 8 Vt. 509.

*Tracy & Converse* and *R. Walker* for plaintiff.

1. As to the defendant's second request the charge was clearly right. If, by that request, the defendant intended, merely, that the " *attentions*," of the character there named, were not of themselves · sufficient to constitute a contract of marriage, the request was complied with ; but if the defendant meant, by that request, that such attentions had no *tendency* to prove a contract of marriage, and must therefore be excluded altogether from the consideration of the jury, such request was manifestly improper. If that were meant, the testimony, when offered, should have been objected to. That " *attentions*," such as were described by the court, and such as were presented by the testimony, had a tendency to prove the issue cannot be denied ;—and that was all the importance given to them by the court. The jury were told they might consider them, in connection " *with other more direct evidence*," &c. *Munson* v. *Hastings*, 12 Vt. 346. Chit. on Cont. 157. *Southard* v. *Rexford*, 6 Cow. 254. *Wightman* v. *Coats*, 2 Stark. Ev. 941.

2. The fourth count is sufficient after verdict. Gould's Pl. 496, § 12. 2 Dougl. 683. 2 Cowp. 825. *Collins* v. *Gibbs*, Burr. 899. *Frederic* v. *Lookup*, 4 Ib. 2018. *Avery* v. *Horle*, 2 Dougl. 825. *Walpole* v. *Marlow*, 2 N. H. 385. 1 Saund. R. 228, note 1. 17 Mass. 229. *Cornwall* v. *Gould*, 4 Pick. 444. *Chester Glass Co.* v. *Dewey*, 16 Mass. 94. The omissions in this count are so connected with other matters alleged, that they must have been proved on trial. If it appear, that substantial justice has been done, the court

will not reverse the judgment, though the declaration may be defective. *Barney* v. *Bliss*, 2 Aik. 60. *Farmers & Mechanics* v. *Flint*, 17 Vt. 508. But however defective one of the counts may be, others being sufficient, if it appear to this court, that no testimony was given on trial, but such as is applicable to the good counts, the judgment should not be arrested. *Bloss* v. *Kittridge*, 5 Vt. 28. *Bliss et al.* v. *Arnold et al.*, 8 Vt. 252. 17 Vt. 508. *Sullivan, Adm'r,* v. *Holker*, 15 Mass. 377.

The reason, why the court will arrest judgment, in case of a defective count and a general verdict, is because the court do not know upon which count the damages were assessed. But when the court are informed, either by the finding of the jury, by apportioning the damages upon the several counts, by finding for one party on one count and for the other party on another, by merely assessing damages on the sufficient counts, saying nothing of the others, or by the certificate of the judge, who tried the case, that the evidence was applicable to the good counts, and even where the certificate shows, that evidence was given both on the good and bad counts, judgment will not be arrested. 15 Mass. 377. *Barns* v. *Hurd*, 11 Ib. 57. *Barnard* v. *Whiting*, 7 Ib. 358. 1 B. & P. 329. Gould's Pl. 524, § 60, 61. 2 Saund. R. 171 *b*, n. 1. 1 Chit. Pl. 395. *Eddowes et al.* v. *Hopkins*, Dougl. 365. 2 Johns. Cas. 21. 3 T. R. 435. 2 Johns. 285. The whole testimony is reported to this court, and the court can see, that it tended directly to support the good counts, and those alone. The court will therefore intend, that the verdict and damages were predicated upon the good counts, 3 Saund. R. 171 *c*. 2 Johns. 285.

The opinion of the court was delivered by

REDFIELD, J. It is claimed, on the part of the defendant in this case, that the testimony given in the court below, was insufficient to found a verdict upon, and that the jury should have been told to find for the defendant. It is urged, in support of this view, that the same thing is virtually decided in *Munson* v. *Hastings*, 12 Vt. 346. I think, perhaps, that, first and last, that case has been as much misunderstood, as any one in our reports. The decision, in the supreme court, goes upon an entire misapprehension of what was intended by the bill of exceptions, which was allowed in the county

court.   But perhaps that misapprehension was a natural one.   The
charge of the court is not very clearly expressed, and is a great deal
too minute, in attempting to aid the jury in weighing the evidence.
And although I was present at the trial in the county court, and
drew up the bill of exceptions, I became satisfied, in the supreme
court, that the case was liable to be misunderstood, and did not
regret, at all, that a new trial was granted.

But the bill of exceptions being published entire in the reports,
many of the profession, perhaps most of them, now understand the
case as it was intended to be understood, and therefore infer, from
a new trial being granted, that such evidence is incompetent to
found a verdict upon, and consequently improper to go to the jury.
But this court do not understand, that any such decision was ever
made by us.   The opinion of the learned judge, in that case, is not
based upon any such view of the case.   All that this court there de-
cide is, that attentions, merely, on the part of an unmarried man to
an unmarried woman, do not constitute a marriage contract; and
that the mere fact, that they are *long continued,* or that the *neigh-
bors suppose* such a contract must exist, adds nothing to their in-
trinsic weight.   The learned judge says, "The law has not deter-
mined, that any particular period of courtship shall be evidence of a
marriage contract";—and farther, "That nothing need be added,
as to the probable opinion and belief of third persons.   It is clear,
that to allow such opinions to influence the finding of this contract,
as between the direct parties to it, would be giving place to a prin-
ciple, which is wholly inadmissible in other cases."   It is very obvi-
ous these are the grounds, upon which the new trial was there
awarded, and equally obvious, that if the grounds existed, they were
sufficient.   It is hardly necessary for me to disclaim any such inten-
tions, by what is said in the bill of exceptions.   But, taking the bill
of exceptions, as it was intended to be understood, this court would
then have been agreed to affirm the judgment, and are now of the
same opinion.

The idea, that, in the trial of a case of this kind, all attentions on
the part of the man, all intimacy between the parties, in short, all
circumstantial evidence, is to be excluded from the consideration of
the jury, involves an absurdity, almost.   If a case were to be tried
in that mode, it would become next to impossible for the jury to de-

termine what weight was due to the positive, direct evidence of a contract of marriage between the parties,—whether it were serious, or mere matter of *banter* and *badinage,* which is not uncommon among young people, and is sometimes, perhaps, carried to the extent of performing the actual ceremony of marriage in sport merely. And if circumstances before the actual contract were to be excluded, so should they, by parity of reasoning, after the contract; and it would then become difficult, or impossible, to determine how far the parties relied upon the contract, or whether they did not, in fact, mutually abandon it, and thus impliedly release each other from its obligation.

And if circumstantial evidence, of the character of mere attentions, is to be received in trials of this character, I do not see, but it must rest with the jury to determine its force and weight, unless this court are prepared to adopt the conclusion of the tribunal, which determined, that circumstantial evidence was proper, and important, *to corroborate positive and direct evidence,* but good for nothing else! We do not suppose, that any such conclusion is fairly deducible from any reported case. But it may be true, that mere attentions do not constitute a contract of marriage; and ordinarily, where nothing else is shown, it will excite suspicion, that no such contract did exist. But these are all questions of fact merely, to be determined by the jury. And in the present case there was evidence, beyond that of these mere circumstances, which, if it gained credit with the jury, must have been of a very satisfactory character. We see no ground whatever for a new trial, so far as this part of the case is concerned.

It is perhaps hardly necessary to allude, in detail, to the authorities on this point. Since the time of *Hutton* v. *Mansell,* 6 Mod. 172,—*S. C.,* 3 Salk. 10,—it has always been held, that the promise on the part of the woman, whether she were plaintiff or defendant, might be inferred from her mere "countenance of the promise" of the man, or her "behaving herself, so as if she agreed to the matter"; or, as is said in Salkeld, "her carrying herself, as one consenting and approving." And in a note to *Irving* v. *Greenwood,* 1 Car. & P. 350, [11 E. C. L. 413,] it is said, no more evidence of the promise on the part of the woman is, in practice, ever given. The same is held by BEST, Ch. J., in *Daniel* v. *Bowles,* 2 Car. &

P. 555, [12 E. C. L. 258.] In reason it is certainly difficult to perceive, why any distinction can be made, as to the *kind* of proof required to make out the promise on the one part, or the other, although in *degree* it might require much more to prove the defendant's promise, than that of the plaintiff. Such is clearly the view taken of the subject by the elementary writers. 2 Stark. Ev. 706. " In an action for breach of promise of marriage, evidence is either, first, *express*, or, second, is from the nature of the case *presumptive.*" And the same rule is recognized in *Southard* v. *Rexford*, 6 Cow. 254, *Wightman* v. *Coates*, 15 Mass. 1, and in all the American cases, which have fallen under my notice, or of which I can obtain any knowledge. And what to my own mind is perfectly satisfactory is, that no case can be found, where the contrary rule is in the least countenanced, unless it be the case of *Munson* v. *Hastings*; nor in practice, until since the decision of that case, have I ever known any such rule seriously insisted upon. We have sufficiently shown, that no such rule is there laid down, or intended to be established.

In regard to the motion in arrest of judgment, for the insufficiency of one count in the declaration, such is no doubt the English rule, unless in some way it is made to appear, that the jury formed the verdict upon the necessary facts, as alleged in the good counts. The rule itself is one, which it is not easy to justify to the ordinary sense of justice, or to reconcile with that other presumption, by which we treat all proceedings as being regular, and upon good ground, unless the contrary is made to appear. Why, in a criminal case, even where life is concerned, one good count is sufficient to sustain a verdict of guilty, amid a multitude of bad counts, and in a civil action, where a few cents only are at stake, one bad count and twenty good ones are not sufficient to maintain a general verdict, are questions, which no man can answer, even to his own mind. The truth is, that this rule is one of the ludicrous absurdities of the system of special pleading, which have exposed the system itself to the jeering and contempt of so many sensible men, and made it an object of scorn to the legislatures of so many of the American states, when it really is, in the main, a wise and rational study, calculated to aid both court and counsel in coming at the truth of a case, and often at great saving of time and expense to the parties. But such absurd abuses, as the one above alluded to, and some others of a like

character, which might be named, have exposed it to very severe and often very just strictures.

The rule has not been followed in Connecticut, or South Carolina, we believe, and in the modern English practice is shorn of much of its absurdity, by awarding, where it can be done, in such cases, a *venire de novo*, which is always the true course, where judgment is arrested in the course of trials of fact. But in the court of error this cannot so well be done, and hence the very general practice has been, in this state, to arrest the judgment *in toto*, sending both parties out of court, without costs. See, upon this subject, *Trevor* v. *Wall*, 1 T. R. 151, where it is held, that a *venire facias de novo* cannot be awarded in a court of error ; *Holt* v. *Scholefield*, 6 T. R. 691, where judgment was arrested *in toto*, and an award of a *venire de novo* refused ; *Anger* v. *Wilkins*, Barnes 478, where a *venire facias* was awarded, on payment of costs, which is there said to be done " according to an ancient rule of court." Such is certainly a reasonable and sensible course, and is perhaps more generally followed, where the motion in arrest is tried in the same court, where the verdict is taken ; but the more general practice now is, to allow the plaintiff to have his verdict upon the good counts, when, from the minutes taken at the trial, it appears, that sufficient facts were shown to entitle the plaintiff to a verdict upon the good counts. 1 Chit. Pl. 396 and notes.

It clearly appears by the minutes taken at the trial in this case, that only the three first counts, which are confessedly good, were read to the jury, and that the jury received evidence, and were by the court expressly required to find the fact, of a promise on the part of the plaintiff,—which is the defect complained of in the count objected to. We deem the remarks made in a former case upon this subject,—*Wood* v. *Scott*, 13 Vt. 47,—equally applicable to the present.                                    Judgment affirmed.