## CATHERINE POSNETT *v.* SUSAN MARBLE.

*Slander. Privileged communication. Words actionable per se.*
*Prefatory averment. Innuendo. New trial where good*
*and bad counts are joined.*

1. A communication made to a post office inspector in answer to an inquiry from him in reference to one who is an applicant for a post office appointment is privileged if made in good faith and without actual malice.

2. In an action for slander the plaintiff need not prove the precise words alleged, but he must show them substantially as laid.

3. To charge one with keeping a house of ill-fame is actionable *per se.*

4. To render words actionable *per se* it is not necessary that the offense charged should be punishable by imprisonment in the State prison. It is enough that the crime involves moral turpitude and is punishable by imprisonment.

5. A count charging. the defendant with having slandered the plaintiff by accusing her of keeping a house of ill-fame, need not contain an averment that the plaintiff had a house.

6. But where the words were, "my mail won't come into a whore house," and it was averred that the plaintiff was an applicant for the office of post mistress and that these words were spoken of her to deprive her of that appointment, it should be further averred that she had a house.

7. The words, "she keeps a common open house; she is nothing but a whore anyway," will support the innuendo that she keeps a house of ill-fame.

8. But words charging that the character of the plaintiff is not in good standing, and that she is in the habit of having men come to her house and stay there for hours at a time will not support that innuendo.

9. Where the several counts charge the speaking of different words upon different occasions, and there is a general verdict, a new trial will be granted, if upon motion in arrest some of the counts are found good and some bad.

This was an action for slander. Plea, the general issue with notice of special matter in justification. Trial by jury at the September Term, 1888, Washington County, TYLER, J., presiding. Verdict and judgment for the plaintiff. Exceptions by the defendant.

The defendant excepted to the action of the court in admitting evidence of a conversation between her and one Chase, a post office inspector, and to the charge of the court in reference

thereto; and also to the charge of the court defining the accu-
racy with which the speaking of the words as alleged must be
proven. The nature of these exceptions appears in the opinion.

The defendant further excepted to the action of the court in
overruling her motion to set aside the verdict. This motion
was made for that the plaintiff did not attempt to prove any
special damage on trial, and did not in fact prove the speaking
of any words actionable *per se*. The question raised by this
exception is fully stated in the opinion. The plaintiff had con-
ceded at the opening of the trial that years before she contracted
a venereal disease from her husband, which was still present to
some extent in her system.

The defendant also moved in arrest of judgment for the insuf-
ficiency of the declaration. This consisted of five counts which
alleged the speaking of different words, to different persons, at
different times and places. The first count was as follows:

"In a plea of trespass on the case, for that, whereas, the said
plaintiff now is a good, honest, virtuous and faithful citizen of
this State, and as such has always behaved and conducted her-
self, and until the committing of the several grievances by the
said defendant, as hereinafter complained of, was always reputed,
esteemed and accepted by and amongst all her neighbors and
other good and worthy citizens of this State to whom she was in
any wise known, to be a person of good name, fame and credit,
to wit, at Fayston aforesaid. And whereas also the said plaint-
iff hath never been guilty, or until the time of the committing
of the said several grievances by the said defendant as herein-
after complained of, been suspected to have been guilty of lewd
and lascivious conduct or of any other misconduct, and has
never been guilty of the crime of keeping a house of ill-fame or
of any other like crime or misconduct; by means of which said
premises the said plaintiff, before the committing of the said
several grievances by the defendant as hereinafter complained
of, had deservedly obtained the good opinion of and was deserv-
edly known as a person of good name, fame and credit, by and
amongst all her neighbors and other good and worthy citizens of
this State to whom she was in any wise known, to wit, at Fays-
ton aforesaid. And whereas also the plaintiff was at the time
of the committing of the said several grievances hereinafter

complained of, a candidate and an applicant for the appointment as post mistress by the United States government at North Fayston, in Fayston aforesaid. And whereas also the plaintiff was at the time of the committing of the said several grievances hereafter complained of, a dealer in groceries and solicited the custom and patronage of her neighbors to purchase the same of her, the plaintiff, and was making great gains and advantage to herself thereby, to wit, at Fayston aforesaid. Yet the defendant well knowing the premises, but greatly envying the happy state and condition of the plaintiff, and contriving and maliciously and wickedly intending to injure the said plaintiff in her said good name, fame and credit, and to bring her into public scandal, infamy and disgrace, with and amongst all her neighbors and other good and worthy citizens of this State and to cause her to be reputed as an indecorous, unchaste, immodest and improper person, and to cause it to be suspected and believed by her neighbors and other good and worthy citizens of this State that the said plaintiff had been guilty of the crime of keeping a house of ill-fame and was a common prostitute, and to vex, harass, oppress, impoverish and wholly ruin the said plaintiff and to prevent her, the said plaintiff's, neighbors and other good and worthy citizens of this State from going to the house of the plaintiff to purchase of her, the said plaintiff, groceries as aforesaid and to harass and hinder and prevent her, the said plaintiff, from obtaining the said appointment as post mistress at North Fayston, in Fayston aforesaid, heretofore, to wit, on the 18th day of February, A. D. 1888, at Fayston aforesaid, in a certain discourse with the said defendant then and there had of and concerning the plaintiff, in the presence and hearing of one John Granfield and of other good and worthy citizens of this State, then and there falsely and maliciously spoke and published of and concerning the plaintiff, the false, scandalous, malicious and defamatory words following, that is to say:

"She" (meaning the plaintiff) " keeps a common open house," (meaning that the plaintiff kept a common open house of ill-fame) ; " she" (meaning the plaintiff) " is nothing but a whore anyway," (meaning that the plaintiff was a common prostitute and kept a house of ill-fame); " her children" (meaning the children of the plaintiff) "are all broken out with sores," (meaning it to be understood that the children of the plaintiff were infected with the venereal disease) " and would poison the mail if it came there," (meaning that said children would handle the mail and would poison the mail by contact with the poison from this

venereal d:sease, if the plaintiff obtained the appointment as post mistress at said North Fayston and the mail came to the house of the plaintiff).

The other counts were substantially the same, except as to the allegation of the defamatory matter, which was as follows in the several counts:

Second Count.—"I" (meaning the defendant) " will have my mail" (meaning the mail coming through the post office to the defendant) "stopped at Moretown," (meaning that if the plaint· iff was appointed post mistress as aforesaid, she, the defendant, would have her mail stopped at the post office at the village of Moretown); " my mail " (meaning the mail coming through the post office to her, the defendant,) "won't come into a whore-house," (meaning that the plaintiff kept a house of ill-fame and that she, the defendant, would not have her mail come through the post office at said North Fayston, if the said plaintiff obtained the appointment to the office of post mistress as aforesaid).

Third Count.—"I" (meaning the defendant) " do not think it " (meaning the dwelling house of the plaintiff) " a fit place for the mail to go, to any such stinking place," (meaning that the plaintiff kept a low house of ill-fame, and that her house was not a fit place for people to go to get the mail which came to them through the post office). Thereafterwards in answer to the question by said Chase, " why are you afraid of any disease, of taking it, or getting poisoned ?" the defendant falsely and mali-ciously spoke and published of and concerning the plaintiff in the hearing and presence of the said Chase and of other good and worthy citizens of this State, the false, scandalous, malicious and defamatory words following, that is to say : " Yes, that is one objection," (meaning that the fear of getting poisoned from the venereal disease was one objection to the plaintiff being appointed to the office of post mistress as aforesaid) " and it " (meaning the dwelling house of the plaintiff) "is no place for it" (meaning that the dwelling house of the plaintiff was no fit place for the post office). Said Chase then asked the question as follows : " Why is the character of Mrs. Posnett not in good standing ?" to which question the defendant in the presence and hearing of the said Chase and of other good and worthy citizens of the State falsely and maliciously spoke and published of and concerning the plaintiff the false, scandalous, malicious and defamatory words following, that is to say : "I " (meaning the defendant) " do not think she" (meaning the plaintiff) " is" (meaning that she did not think that the character of the plaint-

iff was good). Said Chase then asked the defendant the question as follows: " Is she (the plaintiff) in the habit of having men come there to her house and lounge around and stay for hours at a time ?" In answer to which question the defendant in the presence and hearing of the said Chase and of other good and worthy citizens of this State falsely and maliciously spoke and published of and concerning the plaintiff the false, malicious, scandalous and defamatory words following, that is to say : " I " (meaning the defendant) " am sure she" (meaning the plaintiff) " does that" (meaning that the defendant was sure that the plaintiff had men around there, the plaintiff's house, for hours for the purpose of sexual intercourse with the plaintiff) ; " she " (meaning the plaintiff) " has men enough there " (meaning at the house of the plaintiff) " most any time," (meaning it to be understood and believed that the plaintiff kept a house of ill-fame and had men there at any and all times for the purpose of prostitution and to have sexual intercourse with the plaintiff)."

Fourth Count.—" Mrs. Posnett " (meaning the plaintiff) "keeps a house of ill-fame," (meaning that the plaintiff was guilty of the crime of keeping a house of ill-fame) " and all of the boys have what they want of her," (meaning that the plaintiff was a common prostitute, and that she kept a house of ill-fame and that all the men and boys went to the house of the plaintiff and had sexual intercourse with the plaintiff whenever they wished) " and I can prove it," (meaning that she, the defendant, could prove that the plaintiff kept a house of ill-fame) " and she " (meaning the plaintiff) " will steal " (meaning that the plaintiff was guilty of the crime of theft) "and lies," (meaning that the plaintiff was untruthful and would tell lies)."

Fifth Count.—" It's imposing on the community to have the mail go to any one as rotten as she " (meaning the plaintiff) "is," (meaning thereby that the plaintiff kept a house of ill-fame and was a common prostitute and had thereby contracted the venereal disease and that the plaintiff was all rotten with said disease); " she " (meaning the plaintiff) " is all rotten with the pox" (meaning that the plaintiff had contracted the venereal disease and was rotten with the same)."

*Geo. Wing, W. P. Dillingham* and *E. A. Heath*, for the defendant.

No special damage was averred or proved. The words charged are not actionable *per se. Underhill* v. *Wilton*, 32 Vt. 40 ;

Posnett *v.* Marble.

*Dickey* v. *Andros*, 32 Vt. 55; *Hoar* v. *Ward*, 47 Vt. 657; Town. Sl. & Lib. (Ed. 1868) s. 172; *Koch* v. *Kucleman*, 16 Ill. 478; *Davis* v. *Brown*, 27 Ohio St. 326; Odg. Lib. 84.

The counts alleging the speaking of words charging the plaintiff with keeping a house of ill-fame should contain an averment that she had a house. *Merritt* v. *Dearth*, 48 Vt. 65; *Hoar & Wife* v. *Ward*, 47 Vt. 657; *Sheridan* v. *Sheridan*, 58 Vt. 504; *Kimis* v. *Stiles*, 44 Vt. 351.

*Heath & Fay* and *Senter & Kemp*, for the plaintiff.

In order to be privileged the words to the post office inspector must be without actual malice. Odg. Lib. 197, 219, 220, 221; Folk. St. Sl. 311, 331; *Jackson* v. *Hopperton*, 16 C. B., N. S. 829; *Noonan* v. *Orton*, 32 Wis. 106.

The plaintiff need only prove the substance of the words alleged. Odg. Lib. 537 and notes; *Huckle* v. *Reynolds*, 7 C. B., N. S. 114; *Taylor* v. *Moran*, 4 Met. (Ky.) 127; *Bassett* v. *Spofford*, 11 N. H. 127; *Downs* v. *Hawley*, 112 Mass. 237; *Chace* v. *Shannon*, 119 Mass. 387; *Dickey* v. *Andros*, 32 Vt. 55; *Smith et al.* v. *Hollister*, 32 Vt. 695.

The words alleged are actionable *per se.* They charge a crime involving moral turpitude and subjecting the offender to corporal punishment. Odg. Lib. 2, 53, 56; *Brayne* v. *Cooper*, 5 M. &. W. 249; *Huckle* v. *Reynolds*, 7 C. B., N. S. 114; Folk. St. Sl. 104, 121, 122; 1 Am. Lead. Cas. (5th Ed.) 98; *Fowler* v. *Dowdney*, 2 M. & R. 119 and note; *Widrig* v. *Oyer et ux.*, 13 John. 124; *Young* v. *Miller*, 3 Hill, 21; *Birch* v. *Benton*, 26 Mo. 153; *Kenney* v. *McLaughlin*, 5 Gray, 3; *Frisbie* v. *Fowler*, 2 Conn. 707; *Page* v. *Merwin*, 54 Conn. 426; *Pollard* v. *Lyon*, 91 U. S. 225; *Billings* v. *Wise*, 7 Vt. 439; *Redway* v. *Gray*, 31 Vt. 292; *Underhill* v. *Wilton*, 32 Vt. 40; *Murray* v. *McAllister*, 38 Vt. 167; *Rea* v. *Harrington*, 58 Vt. 181; No. 95, Acts of 1884; *McAllister* v. *Clark*, 33 Conn. 91; *Griffin* v. *Moore*, 43 Md. 246; *Fitzgerald* v. *Robinson*, 112 Mass. 371.

The function of the innuendo is to declare the sense in which the words were spoken ; and where they are susceptible of the meaning put upon them, it is for the jury to say whether they were so used. It is submitted that the words here alleged were capable of sustaining the meaning put upon them, and that in the light of the prefatory averment, they fairly do. 1 Am. Lead. Cas. 146 ; Odg. Lib. 100, 101, 111, 112 ; *Williams* v. *Gardiner*, 1 M. & W. 245 ; Odg. Lib. 59, 93 to 98, 111 to 113, 557 ; Folk. St. Sl. 134, 135, 139 to 141, 144 ; Town. Sl. & Lib. s. 143 ; *Coleman* v. *Goodwin*, 2 B. & C. 283 ; *Clegg* v. *Laffer*, M. & Scott, 727 and note ; *Wilson* v. *Barnett*, 45 Ind. 163 ; *Waugh* v. *Waugh*, 47 Ind. 580 ; *Robinson* v. *Drummond*, 24 Ala. 174 ; *Rogers* v. *Kline*, 56 Miss. 808 ; *Sanderson* v. *Caldwell et al.*, 45 N. Y. 398 ; *Downs* v. *Hawley*, 112 Mass. 237 ; *Dickey* v. *Andros*, 32 Vt. 55 ; *Chamberlin et ux.* v. *Vance*, 51 Cal. 75 ; *Brettun* v. *Anthony*, 103 Mass. 37 ; *York* v. *Johnson*, 116 Mass. 482 ; *Chace* v. *Sherman*, 119 Mass. 387 ; *Weil* v. *Schmidt*, 28 Wis. 137 ; Folk. St. Sl. 100 and notes, 144 to 152 ; *Gilman* v. *Lowell*, 8 Wend. 573 ; *Blickenstoff et al.* v. *Perrin*, 27 Ind. 527 ; *Rogers* v. *Lacey*, 23 Ind. 507.

The opinion of the court was delivered by

MUNSON, J. The plaintiff was an applicant for appointment as postmistress at the North Fayston office. The defendant's husband was an applicant for the same position. One Chase, a post office inspector, was engaged in inspecting this office. While so engaged he procured the defendant's attendance at the office, and questioned her in regard to the plaintiff. The defendant at first declined to say anything about the plaintiff, whereupon Chase told her it was his business as inspector to make the inquiry and her duty to give him the information. The defendant then had a conversation with Chase concerning the plaintiff, in which it was claimed she used the words set forth in the third count. The testimony offered in proof of what the defendant said was objected to on the ground that the communication was privileged. The court received the evidence, but told the jury

Posnett *v.* Marble.

in submitting the case that the occasion was in a sense privileged; and further instructed them that if the defendant said what she did in good faith and without malice she would not be liable, but that if she improved the occasion to maliciously make false charges against the plaintiff she would be liable therefor. To such admission of evidence and to this part of the charge the defendant excepted.

The plaintiff was an applicant for appointment to a public office. In view of her application, her character was a matter of public concern. The defendant was a member of the community immediately interested in the result of the application. Her conversation was with one who she might naturally suppose could prevent the appointment. The circumstances were such as to justify the defendant in communicating what she honestly believed as to the plaintiff's conduct and character. The selection of suitable persons for the performance of official service is essential to the interests of both the government and the citizen. These interests can be protected only by the communication of information and by free discussion concerning the fitness of applicants. It would tend to repress this necessary freedom, and would be a manifest injustice to the citizen, if communications of this character subjected the person making them to the payment of damages in the event of an honest mistake. But these considerations disclose no necessity for a privilege broad enough to cover charges which are unfounded and malicious. A just distinction is established, and reasonable protection afforded to every interest, by holding communications of this nature to be *prima facie* privileged. By virtue of this privilege, a defendant who has made a statement which cannot be substantiated is relieved from the effect of a legal presumption of malice, and is made liable only by proof of actual malice. The occasion in question was not one of absolute privilege, but was so far privileged as to protect a communication made in good faith and from an honest motive. The testimony objected to was properly admitted, and the charge of the court as to the nature and limitation of the privilege was correct. Town. Sland. s. 209; 1 Am. Lead. Cas. 166.

The plaintiff was permitted to show by the person who served the writ what the defendant said on hearing it read. This was under objection and exception. The exceptions show what counsel anticipated the testimony might be, but do not state what the testimony was. In the charge it was treated as testimony to admissions of the defendant, and no exception was taken to this as unwarranted by the evidence. The exceptions disclose no error.

The defendant excepted to the charge as to the degree of precision required in establishing the defamatory words. The court first instructed the jury that the plaintiff must prove the words alleged in the declaration substantially as laid, and afterwards said it was not necessary that they should find the defendant used the precise words alleged, but that they must find the charge was made substantially in the words set forth. This is in accord with the rule deduced from the authorities and laid down in *Smith* v. *Hollister*, 32 Vt. 695. We think it was sufficiently explicit. It left no room for the jury to suppose that proof of other words of substantially the same meaning would entitle the plaintiff to recover.

Several points are made under the motion in arrest. No special damages were shown. The words charging the disease were justified, the plaintiff conceding the fact. The case stood upon the charge of keeping a house of ill-fame. It is urged that words charging one with keeping a house of ill-fame merely are not actionable *per se.* The statute provides for the punishment of one who keeps " a house of ill-fame resorted to for the purpose of prostitution or lewdness." The innuendo in each count explains the words spoken as meaning to charge the plaintiff with keeping " a house of ill-fame," without using the further words of the statute. It is said there are several kinds of houses of ill-fame, and that as the matter is left by the pleader, the words must be taken to mean a house of ill-fame of a more innocent character than the one described in the statute. Both at common law and in common language the term " house of ill-fame," without words giving it a special application, means a house resorted

to for prostitution. Bouvier defines a house of ill-fame to be " a house resorted to for the purpose of prostitution and lewdness." Thus, to charge one with keeping a house of ill-fame is to charge the exact offense punished by our statute. The innuendo is sufficient in this respect, unless it is necessary, in alleging that a statutory offense was intended, to use the entire language of the statute. We do not think this strictness is required.

It is further insisted that if the words are sufficient to charge the crime described in the statute, the punishment of the crime is not an infamous one, and that the words are therefore not actionable. This claim is in view of the fact that by the statute of 1884 the punishment was changed from imprisonment in the State prison to imprisonment in the house of correction. But it is sufficient if the punishment is corporal; the place of confinement is not the test. The crime charged is one that involves moral turpitude and subjects the offender to imprisonment, and the words are therefore actionable. *Redway* v. *Gray*, 31 Vt. 292.

It is also objected that in neither count is there an averment that the plaintiff had a house. As regards the first and fourth counts, in which the defendant is charged with using words directly denoting the possession of a house, this is no defect. When the slanderous words themselves import the existence of the thing it is not necessary to aver its existence. Town. Sland. s. 308, n; 1 Chit. Pl. 403. The slander is the same whether the falsity of the charge relates only to the character of a house or includes the existence of one.

The defamatory words relied upon in the first count are : " She keeps a common open house ; she is nothing but a whore anyway," and the meaning assigned is that she kept a house of ill-fame. The question is not, as assumed by the defendant, whether this is the only natural meaning of the words " common open house." In determining the meaning of this particular phrase the language used is to be taken together, and the question then is, what might the person to whom the words were spoken have properly taken them to mean ? Might they not,

without other aid, have naturally conveyed the meaning assigned by the innuendo ? If so, the words are legally susceptible of the meaning charged and the count is sufficient after verdict. The charge of keeping a common open house, standing alone, could not support an innuendo that a house of ill-fame was meant, without the aid of special prefatory averments. But when it is said of a woman who in the same connection is declared to be a prostitute, that she keeps a common open house, we think the words are legally susceptible of the meaning here ascribed to them ; and the jury has found by its verdict that they were used by the defendant in that sense.

The important words of the second count are: "My mail won't come into a whore house." The term used to indicate the character of the house is, in common language and acceptation, synonymous with the term used in the statute. But the defamatory words have no apparent connection with the plaintiff or her affairs, and their application must fully appear from the antecedent averments and colloquium. It is averred that the plaintiff was an applicant for appointment as post mistress, and that the defendant spoke the words of and concerning the plaintiff to prevent her obtaining such appointment. We think there should have been also an averment that the plaintiff had a house, and that the colloquium should have been framed to include it. Here the charge is made by an indirect reference, and the possession of a house is only implied.

In the third count the defendant is charged with having referred to the plaintiff's house as a " stinking place," and an unfit place for the mail. This is alleged to have been followed by a question and answer as to the possible communication of some disease. The subsequent conversation is set forth as follows : " Why, is the character of Mrs. Posnett not in good standing ?" " I do not think she is." " Is she in the habit of having men come there to her house and lounge around and stay for hours at a time ?" " I am sure she does that. She has men enough there most of the time." We think an innuendo which ascribes to the defamatory language of this count the meaning

that the plaintiff kept a house of ill-fame, goes beyond the fair import of the words. The words relating to the presence of men at her house are not in themselves sufficient to carry this meaning, and there is no direct charge touching the plaintiff's character for chastity to give them aid.

The objections to the fourth count are confined to the points, already considered, in relation to the description given the offense in the innuendo and the want of an averment that the plaintiff had a house.

The defamatory words of the fifth count charge the plaintiff with having a venereal disease. There is not a further suggestion in the language. It utterly fails to justify the innuendo that the plaintiff kept a house of ill-fame.

The several counts purport to be for words spoken upon different occasions. A general verdict was rendered upon all the counts. The second, third and fifth counts are held to be insufficient, and the court has no means of determining upon which counts the damages were in fact assessed.

This being the situation, what disposition shall be made of the case? The courts are not agreed as to the procedure. One course is to end the suit by arresting the judgment. Another course is to award a *venire de novo*. In *Haselton* v. *Weare*, 8 Vt. 480, the court arrested the judgment, saying that this was in accordance with the settled rule in England. The court had before it English cases in which this course had been taken, but the English practice up to that time was far from uniform, and the other method has since prevailed. One of the cases relied upon by the court in *Haselton* v. *Weare*, was *Holt* v. *Scholefield*, 6 T. R. 691. But this case was expressly overruled by *Leach* v. *Thomas*, 2 M. & W. 427, soon after *Haselton* v. *Weare* was decided. In *Leach* v. *Thomas*, it was said that this point did not appear to have been at all argued in *Holt* v. *Scholefiel; d*and in *Corner* v. *Shew*, 4 M. & W. 162, Parke, B., in stating that the point had been considered doubtful before the decision of *Leach* v. *Thomas*, expressed surprise that such a doubt should have existed, inasmuch as the matter had been provided for by rules of court in both the King's Bench and

Posnett *v.* Marble.

the Common Pleas as early as 1654. In *Empson* v. *Griffin*, 11 Ad. & E. 186, the court of Queen's Bench followed the decision in *Leach* v. *Thomas*, and awarded a *venire de novo*.

The rule adopted in *Haselton* v. *Weare* has never been cordially approved. In *Wood* v. *Scott*, 13 Vt. 42, the court considered the question settled, but REDFIELD, J., referred with evident sympathy to the regret expressed by Lord Mansfield in *Peake* v. *Oldham*, Cowp. 275, that such a rule had been established. In *Camp* v. *Barker*, 21 Vt. 469, and in *Whitcomb* v *Wolcott*, 21 Vt. 368, the court vigorously criticised the rule, and indicated its intention to make all reasonable intendments in favor of a verdict when some of the counts were good. In the latter case, the court referred to the modern English practice of awarding a *venire de novo* where it could be done, as the true course, but considered that this could not well be done in a court of error. In *Joy* v. *Hill*, 36 Vt. 333, the motion in arrest was disposed of on the ground of a misjoinder of counts, the question whether the expressions in more recent cases had abrogated the law as declared in *Wood* v. *Scott* being recognized but not considered. In 1865 the difficulty was removed by statute as far as declarations containing only counts for the same cause of action are concerned. R. L. 913. In *Dunham* v. *Powers*, 42 Vt. 1, and in *Kimmis* v. *Stiles*, 44 Vt. 351, decided since this enactment, the counts not being for the same cause of action, it was considered that judgment should be arrested.

In view of the misapprehension under which the rule was adopted, the position afterwards taken in regard to it, and the modern vindication in the English courts of the earlier and better practice, we are inclined to extend the benefit of a new trial to cases like this. Upon a mistrial of this character, we think the law may conveniently and properly give the litigants a more substantial justice than is afforded by an arrest of judgment. That the proposed action may properly be taken by this court is apparent from the settled practice of many courts of error. The nature of the proceeding is fully stated in *Corner* v. *Shew*, above cited. The theory is that the defect is in the ver-

(32)

dict. The order is made, in the language of the ancient rule, " as upon an ill verdict." By sending back the case an opportunity is given to have the damages assessed upon the good counts only. The plaintiff will also be entitled to the usual privileges of amendment under the rules of the trial court.

*Judgment reversed. New trial granted on condition that plaintiff pay defendant's costs heretofore incurred in the court below, and take no costs for that time in the event of a final recovery; and if a new trial is not desired upon these terms, plaintiff to become non-suit. Cause remanded.*