[PHILADELPHIA, JANUARY 29, 1838.]

## FOSTER *against* SMALL.

### IN ERROR.

1. In slander, though evidence of all the words alleged need not be given, it seems necessary that at least some of those that are actionable should be proved as they are laid.
2. It is not actionable to say of a physician that he is "a two-penny bleeder."
3. A declaration in slander charged the defendant with asserting of the plaintiff "He is not a physician, but a two-penny bleeder."—The words sworn to by one witness were "If doctor F. is a two-penny physician I am none; I am a regular graduate, and no quack." Another witness swore to the following words, "Doctor F. is no regular bred physician; he has no diploma; he kills his patients, and bleeds them to death."— *Held,* that the proof did not support the declaration.
4. It seems that it is not actionable to charge a physician in Pennsylvania with want of a diploma, or of a collegiate training.

ERROR to the District Court for the City and County of Philadelphia to remove the record of an action on the case brought by Robert Foster against William B. Small, to recover damages for slanderous words alleged to have been uttered by the defendant concerning the plaintiff.

[*139]  *There were four counts in the declaration.

1st count. "He, (the plaintiff,) is not a physician, but a two-penny bleeder."

2d count. "He, (the plaintiff,) was called to a man near the new bridge, who had injured his leg, and by his (plaintiff's) bad treatment the man must have been lame for life had not I, (defendant, Dr. Small,) been called to him."

3d count. "Foster had given a child stuff to butcher it."

4th count. "He, (the plaintiff,) had butchered a child."

Two additional counts were afterwards filed, which contained in substance only the first count in the original declaration.

On the trial below, before Judge Stroud, the plaintiff produced the following testimony.

Richard Greening deposed as follows:—"It was last June, or July, three years, I removed to Four Nations' Hotel, near Fair Mount, and had a nephew very sick. Dr. Jening prescribed, and I got medicine from a druggist in Callowhill-street, near Fair Mount. The boy refused to take the medicine, which I told Dr. Jening. He then advised that I should get the boy bled. I went home and inquired of my hostler for a doctor. He mentioned that there was two in Callowhill-street, Drs. Foster and Small. I told him to go for the nearest to come and see my boy, and if the nearest should be out, to try the next one.

(Foster *v.* Small.)

It appears he went to both doctors, Foster and Small. Dr. Foster came first. I showed him into the room, and whilst he was bleeding the boy, I went down into the bar room, and Dr. Small was there. I told him how it happened, and that Dr. Foster was bleeding the boy. He then turned round and said he would charge for this visit. I offered to pay him for it, but he went out without telling me his charge.

Dr. Foster continued attending the boy and he got well. Sometime after that, the druggist sent in his bill to me for the medicine which had been got for the boy. I called down to the drug store to inform him how he could get his money. Dr. Small was there. I explained to Small how they, (F. and S.) met at the same time. He, (Dr. Small,) said, if *Dr. Foster was a two-penny bleeder, he was none; he was a regular graduate and no quack.* I told him I did not know whether he was a graduate or quack."

James C. Keen deposed:—"I am acquainted with Doctors Foster and Small. Have heard Dr. Small speak derogatively of Dr. Foster at two different times. He said Dr. Foster was no regular bred physician—had no diploma, and that he killed his patients. Went on to say, that he would bleed them to death. He named a patient *that Dr. Foster had in the neighbourhood, and said he thought Foster would bleed him [*140] to death; that he did not know the treatment. I walked off, not wishing to listen at that time. At another time he, (Small,) stopped me and began to talk of Foster. He said something like he did before, as that he was no doctor, and behaved ungentlemanly, and took patients out of his (S.'s) hands."

Mrs. Montgomery deposed:—"We rented the front room, and Dr. Small came in: He asked me if this was not where the butchered baby was. I told him not as I knew of—no butchered baby was here. I told him there was a woman living up stairs who had two children—neither of them was sick to my knowledge. Mr. Given had a baby that was sick since I came to the house— it was getting well. I told him it never got any medicine that I knew of except a little lime-water and new milk. I called the mother out, as I had got frightened on account of the child's sitting in my room all the while. The reason I was frightened was that I was in the habit of nursing the child, and for fear that some person would tell Dr. Small that I had done something cruel to the child, (and that is the reason I called the child's mother out,) and thought she would understand the thing better than myself. When she, (Mrs. Given,) came out she said, 'Doctor, you must be under a mistake.' He said, 'No, not at all. I am under no mistake; the child's father bid me come round the first time it was convenient to see it—that Foster had given it stuff to butcher it.'"

(Foster *v.* Small.)

William Gourley deposed: "I visited the house of Mr. Gordon at different times, in company with Dr. Foster. I was there when Dr. Foster inquired of Mr. Gordon whether he had heard Small say he, (Foster,) was no physician. Gordon replied, 'Dr. Small did say he, (Foster,) was no physician.'"

The defendant produced Mary Small as a witness, who deposed as follows:—

"I am acquainted with Thomas Given—know him by sight. Given was coming in Callowhill-street: Dr. Small was standing in the door: Given said to Small, 'Doctor, I wish you to come and see my child; Foster is butchering it.' Small said, 'I guess not.'"

The learned Judge charged the jury in substance as follows:—

"The slander which the plaintiff alleges to have been uttered of him by the defendant, is stated in the declaration to be, 1st, 'He is *no* physician, but a two-penny bleeder'; or, as it is laid in another count, 'He is *not* a physician, but a two-penny bleeder'; 2d, Foster has given a child stuff to butcher it'; and 3d, 'He has butchered a child.'

Two witnesses, Richard Greening and James C. Keen, have been examined to support the first charge. There is no reason to think [*141] *they speak of the same utterance, for Greening says, no one was in the apothecary's shop beside himself, Dr. Small, and the apothecary; and Keen makes no mention of having been there, or of having heard the words there. The charge is entire and ought to be proved substantially as laid. Now Greening only proves that Small said 'If Foster was a two-penny bleeder, he was none. He was a regular graduate and no quack.' This does not support the charge as laid. Keen says, 'Small spoke derogatively of Foster—said he was not a regular bred physician—had no diploma;' and in the second conversation, 'He said something like he did before, as that he was no doctor—behaved ungentlemanly, and took his patients out of his hands.' This is not the charge in the declaration, it does not sustain it. It is a very different charge; and if it had been so laid in the declaration would have raised a different question. The 2d count is in effect abandoned—no witnesses having been called to speak to it.

The 3d charge is supposed to be proved by the deposition of Catharine Montgomery. But her evidence is that the defendant said the father of the child had told him what is here charged to have been spoken by the defendant, on his own authority, without reference to a third person.

The proof establishes what the law considers a milder charge than what is laid; and therefore, by express decision of our courts, does not support it. The plaintiff, therefore, has failed

(Foster *v.* Small.)

to prove either of the counts, and the verdict should be for the defendant."

The jury accordingly found for the defendant, and the plaintiff having taken a bill of exceptions, and writ of error, filed the following exceptions:—

"1st. The Court erred in charging the jury that the depositions of Greening and Keen did not, in substance or fact, sustain the first count in the declaration.

2d. The Court erred in charging the jury that the deposition of Christiana Montgomery did not sustain the second count in the declaration.

3d. The Court erred in charging that the deposition of James C. Keen did not sustain the third count in the declaration.

4th. The Court erred in withdrawing the case from the jury, and directing a verdict for the defendant, because the plaintiff had not sustained any of the counts in the declaration.

5th. The Court erred in charging the jury that James C. Keen's proving that Small said that Foster was no doctor, was not, in substance, that he was no physician."

Mr. *Jack*, for the plaintiff in error, cited Starkie on Slander, 114; *Hersh* v. *Ringwalt*, (3 Yeates, 509); *Davis* v. *Davis*, (1 Nott & M'C. 290.)          [*142]

Mr. *W. L. Hirst, contra.*

The opinion of the Court was delivered by

GIBSON, C. J.—Though evidence of all the words alleged need not be given, it seems necessary that at least some of those that are actionable be proved as they are laid; and while the proof of speaking is for the jury, the correspondence betwixt the words spoken and the words laid, is for the court. The very words need not be proved; but where they are in fact proved, they must, it seems, correspond with the very words laid; and hence perhaps it is, that words spoken in the second person are not legal equivalents for words of the very same import spoken in the third. The only words before us, of which there is a semblance of proof, are contained in the first count: "He is not a physician, but a two-penny bleeder." Now though words which impute professional ignorance are certainly actionable, yet to say of a physician that he is a two-penny bleeder, imputes not want of professional skill, but want of professional dignity manifested by a petty attention to the humbler employments of the art. They are, in fact, words of mere contempt. But the time has been when the business of the bleeder was not a distinct one, and when it was performed, as it still is in the country, by physicians of

(Foster *v.* Small.)

the first eminence.   How far then are the actionable words " he is no physician," supported by the proof?   The words sworn to by the first witness are :  " If Dr. Foster is a two-penny physician I am none ; I am a regular graduate and no quack."   Now granting for the moment that proof of insinuation is equivalent to proof of assertion, and that a charge may be laid indifferently as insinuated or asserted, without regard to the proof, yet the charge insinuated here, was in fact not want of skill, but want of graduation ; and though the imputation of being a quack might sustain an action, it is not laid as a gravamen in the present. The words proved by the second witness are :  " Dr. Foster is no regular bred physician ; he has no diploma ; he kills his patients and bleeds them to death."   Here too it is proper to remark, the imputation of killing by blood-letting is not laid as a ground of action, and the material words are consequently those which allege irregular breeding, and want of the usual collegiate certificate.   Now were these admitted to be actionable when accurately laid, proof of them would not support the present declaration ; for there is an evident difference, in respect to the malignity involved as well as in the injury intended to be done by it, betwixt being irregularly bred and not being bred at all.   But though it was held in *Cowdry* v. *Highley,* (Cro. Car. 270,) that it is actionable to say of a physician, he is no scholar, yet rules that are the growth of a country in which collegiate testimonials are the only [*143] *passports to professional fame, are unsuitable to the habits of a people among whom professional instruction in colleges and universities was not originally attainable.   Fifty years ago medicine and surgery were in the hands of American practitioners who taught their pupils as they had themselves been taught, without that collegiate training which now is happily accessible to all ; and the want of a diploma is still not indispensable to medical reputation.   But decisions in Croke's Reports are unsafe precedents for the law of slander at the present day. The same witness however testified that the defendant said on another occasion, " *something like he did before,* as that he was *no doctor,* that he behaved ungentlemanly, and took patients out of his hands."   Were this not qualified by reference to something said before, the words " no doctor," would have furnished matter for the jury ; but the reference to the former colloquium, conclusively indicated that no more was meant than a repetition of the former charge.   The proof therefore did not support the declaration.

Judgment affirmed.

Cited by Counsel, 9 Harris, 523.