Addison,<br>January,<br>1843.

Smith &<br>Smith et ux.<br>v.<br>Miles.

Judgment reversed.

---

FREDERICK SMITH v. JAMES MILES ; and FREDERICK SMITH and WIFE v. JAMES MILES.

In actions for slanderous words, the jury are to determine the sense in which the defendant spoke the words, and the truth of the innuendos alleged.

In cases where the words are equivocal, or are spoken with reference to circumstances supposed to be in the minds of the hearers, which go materially to qualify their import, the condition and circumstances of the subject-matter connected with the charge may be inquired into, and the sense in which the hearers understood the words, and in which they supposed the defendant intended them to be received, may be considered by the jury.

But the mere fact that the defendant charged the plaintiff with theft, in regard to an article of property which had been either loaned or sold to the plaintiff, but which sale or loan was not known to those, in whose presence he made the charge, will not be a ground of showing, either that the act charged was impossible, or that the charge was not seriously made ; nor, is it competent to go in mitigation of damages, except as tending to show the words were spoken in heat and haste.

THESE were actions of slander,—the first in a declaration of four counts, charging the defendant with having spoken the words following.

" Smith and his wife have both stolen my property, and I can prove it."

" I have been down to get my lightning rods, before Smith steals them, for he has stole and will steal again."

Addison,
January,
1843:

Smith &
Smith et ux.
v.
Miles.

" You (Smith) have stole from me—you and your wife both."

" Smith and his wife, have stole, and I can prove it, if Horace Loomis will tell the truth."

The words charged in the second case, were substantially the same. Pleas, the general issue and trial by jury. The testimony offered, the testimony rejected, the request to charge, the charge, and the exceptions, were the same in both cases.

In the first case, the plaintiff gave evidence tending to prove the speaking of the words as set forth in the plaintiff's declaration. The defendant, without objection, gave evidence, tending to prove, that, before the speaking of the words complained of, one Loomis had deposited with the plaintiff a quantity of personal property, among which was a bed-tick, and that he had sold the same to Smith, with the exception of the bed-tick, which the defendant claimed that Loomis had given to him, but which the plaintiff claimed he had purchased of Loomis, with the other property.

It appeared, also, that, at one of the times of speaking the words alleged in the declaration, in the presence of divers persons, he, the defendant, was inquired of, after the speaking of the words, what he meant, and he replied that he alluded to the bed-tick as the property which the plaintiff had stolen ; but there was no further, or other, explanation made by the defendant. At the other times of speaking the words charged, there was no explanation asked, and none given, though some of the witnesses had heard that the parties had had some difficulty about a bed-tick, and supposed the defendant might have intended to allude to that ; but there was no evidence that they ever had learnt from him under what circumstances it went into the possession of the plaintiff.

The defendant requested the court to charge the jury that if they found the bed-tick had been put into the possession of Smith, with the other property, by Loomis the owner of it — that, admitting that Miles had bought it of Loomis, Smith's refusal to give it up to Miles, and his using it in his family, would not be theft—and, that, if the jury found that the words spoken had reference to the bed-tick, and were so understood by those in whose hearing they were spoken,

they should consider the words not actionable ; or if action-
able, that it should go in mitigation of damages.

ADDISON,
January,
1843.

Smith &
Smith *et ux.*
*v.*
Miles.

The court declined so to charge the jury, but did, among
other things, charge them that it was of no importance
whether the defendant referred to the bed-tick as the prop-
erty stolen, and was so understood at the time of the speak-
ing of the words, or whether he referred to other property
which might be stolen, inasmuch as there was no evidence
tending to show that the defendant ever so explained the
words spoken, as tended to prove that his meaning was only
to charge the plaintiff with being guilty of those acts which
would constitute a mere trespass, and not a theft ; and that
it would constitute no defence to the action, and was not
admissible in mitigation of damages any further than it might
tend to prove that there existed a quarrel between them, and
that the words were spoken in the heat of passion, or under
excitement ; and that, in this point of view, the jury might
take it into the account in mitigation of damages, and give it
its proper effect.

The defendant offered in evidence the deposition of one
German F. Warner, which was objected to by the plaintiff,
and that part of it was rejected by the court, as being imper-
tinent, in which the deponent stated that, about the time
that Loomis moved from Ripton, the plaintiff, Smith, told
the deponent that Loomis wanted to sell him, among other
things, a bed-tick, and that he told Loomis he did not want
it—that he understood Smith to say that Loomis, afterwards,
gave it to Miles, and that Smith, afterwards, told the depo-
nent that his, Smith's, wife had cut it up and used it.

The jury returned a verdict for the plaintiff.

To the charge, and omission to charge, and decision ex-
cluding part of the deposition, the defendant excepted.

*O. Seymour*, for defendant.

Words spoken of another, imputing the commission of a
crime, are actionable only, on the ground that they expose
the party accused to a criminal prosecution ; therefore,
words, in themselves imputing the commission of a crime,
are not actionable, when spoken of a transaction, which
could not amount to the crime charged. For this reason,
that part of the deposition of Warner, excluded by the court,

Smith &
Smith *et ux.*
*v.*
Miles.

should have been admitted, as tending to show that the transaction in relation to which, the words charged in plaintiff's declaration, were spoken, was a simple tort, and could not amount to the crime of theft.

The court erred in refusing to charge the jury as by defendant requested, and in *giving such* charge as the case shows was given, because slander and damage consist in the apprehension of the hearers ; and if the words charged in plaintiff's declaration were understood by those who heard them, to be spoken in relation to the " bed-tick transaction "—which was no theft, but *trover—then* they were not actionable ; and it was of no consequence whether the hearers understood this from an explanation made at the time by the defendant, or otherwise. 2 Stark. Ev. 461 ; *Penfold* v. *Westcott,* 5 Bos. & Pul. 335 ; *Fleetwood* v. *Curley,* Hobart's R. 268 ; 1 Viner, 507 ; Sel. N. P. 1158 ; *Van Rensselaer* v. *Dole,* 1 Johns. Cas. 279.

*C. Linsley,* for the plaintiffs.

I. The charge was right, there being no explanation of the words at the time, and nothing tending to shew that the defendant designed to charge plaintiff only with a trespass. It can be no answer to an action of slander, to show that the speaker alluded to some particular transaction, unless from all the words it appears that he did not intend to make the charge, which the words naturally import.

II. The words import a felony as much if the speaker said he stole a bed-tick, as if he had not specified what he did steal. " A general slanderous imputation conveyed in apt terms," is said, by an able writer, to be a good definition of slander for which an action may be had. Whether words are slanderous or not, is a question of law. Hence if the court perceive that the words are so qualified by the context, or the subject-matter, that they do not import a felony, but a mere trespass, then, the words are not actionable. Stark. Sl. 80; *Dexter* v. *Taber,* 12 Johns. 241 ; Ld. Ray. 959.

III. The words, after verdict, are to be taken to have been used in a slanderous sense, if capable of such a meaning. Starkie on Slander, 81.

IV. The deposition was properly excluded, there being nothing in the part excluded that was legal evidence under the issue.

The opinion of the court was delivered by

REDFIELD, J.—It is obvious the jury must find the speaking of the words as alleged, i. e. so many of the same words as go to constitute the sting of the charge, and the truth of all the averments and innuendos necessary to support the action. In order to do this, they must determine whether the defendant, apparently, used the words in their common and obvious signification, or in some ironical, hyperbolical, allegorical or other figurative sense.

In this view, doubtless, the sense in which intelligent and observing witnesses, who were present, and noticed the publication, understood the words, is important to determine the extent of the defendant's liability ; but it is not conclusive. The defendant is supposed to intend what his words import, and what others understand from them. But he may intend to convey a deeper meaning than is apparent at first blush ; and he may intend less. This depends upon the attending circumstances, gestures, tones, and innuendos, which have a " most potent oratory " often, but which no man can describe or imitate. Hence, those who see and hear those incidents, are permitted to state the impression made upon their minds, at the time, on the same ground, I apprehend, that any witness is allowed to state appearances, in any case, where such appearances are, in their nature, incapable of exact and minute description ; e. g. the health or sanity of a person, at a particular time, in regard to which even unprofessional witnesses are permitted to speak of opinions formed at the time from indications and appearances not susceptible of description.

But, after all, the true test is the same given by Dr. Paley, as a test of the interpretation of promises and contracts, namely, how did the person, speaking the words, expect others, to whom they were addressed, would understand them ? —for by this expectation he must, and ought to be, bound. Now this is a question we can never determine, with absolute certainty, but must resort to such circumstances as are calculated to show what this expectation was.

It is, doubtless, further necessary that it be shown that the bystanders understood the words to convey a slanderous imputation, as malice and damages are both necessary to concur, in order to give a ground of action. So that the mere

ADDISON, January, 1843.

Smith & Smith et ux. v. Miles.

fact that the defendant intended to be understood in a slan‑ derous sense is not, perhaps, sufficient.

I think it may be safely assumed that the person speaking will expect the hearers to take the words he speaks with reference to all the facts which he names at the time, and as many other facts or circumstances as he may reasonably expect are within their present knowledge. If the speaker has a hidden and secret meaning beyond that, which renders the words either more or less slanderous, and which he has no reason to expect will be communicated to the minds of his hearers by the words which he uses, that secret meaning is not to be taken into the account, either to increase or ex‑ tenuate the guilt of the defendant.

Thus if the defendant makes a declaration which, in its terms, or with reference to facts which he supposes to be in the recollection of the hearers, is impossible, or, so to speak, *felo de se*, he expects it will beso received. Hence the nu‑ merous decisions in regard to slanderous words of that char‑ acter—e. g. to say of the plaintiff, " he is a murderer, he ' killed my dog" ; " he is a thief, he stole my farm or tree" ; " he is a counterfeiter, and paints miniatures," &c.

And if the charge is impossible with reference to facts supposed to be in the minds of the hearers, it is the same as if they had been expressed. Hence, in his defence, the de‑ fendant is always permitted to show these facts, in order to show in what sense he is liable for using the words. This is the ground of the decision in the case of *Van Rensselaer* v. *Dole*, 1 John. Cas. 279. The words were charged to have been spoken, and were proved to have been spoken, with reference to the procession at Lansingburgh on the 4th of July, and what was notoriously within the knowledge of the hearers, at the time of the speaking ; and the charge was manifestly and absurdly impossible, and even ridiculous, with reference to the known transaction, as understood and ac‑ knowledged, both by the defendant and all who heard him. In that case, a Mr. Bird claimed a bass viol of the celebrating party, of which the plaintiff was one, and they refused to give it up, and retained it by force, whereupon an affray ensued, and Bird received a dangerous wound. The words were, that all the party were " a set of black-hearted high‑ ' waymen, robbers and murderers."

Addison,
January,
1843.

Smith &
Smith et ux.
v.
Miles.

There is another class of cases, where the words are ambiguous in their import, like a charge of stealing corn, timber, &c., which, while growing upon the land, is not the subject of theft, but when secured, may be.   And here the same rule is pursued in regard to slanderous words which is adopted in the construction of contracts ; and the condition of the subject-matter, at the time of the alleged taking, if the charge be theft, is permitted to be shown, as the words are supposed to have been spoken, and understood, according to their natural import, with reference to the acknowledged or ascertainable condition of the subject-matter, at the time of the taking, or the speaking of the words.   It is upon this ground the case of *Dexter* v. *Taber*, 12 Johns. R. 239, should have been decided, and that would have brought the court to the same result they reached by another road, which I should agree with Justice Spencer was one rather darkly defined by established principles, or former precedents.   It is on this ground, if any, that the case of *Christie* v. *Corvell*, Peake's N. P. C. 4, must be justified.   " He is a thief, he ' stole my beer."   Mr. Selwin puts the case on the same ground with—" you are a thief, you stole my tree."   Cro. Jac. 114 ; Bul. N. P. 5.   That is the only ground of reconciling the case with principle ; and, in that view, it is much like *our nisi prius* cases—not, always, very well considered, or very wisely determined, and sometimes, if sustained, it must be by giving them a construction they were never intended to bear.

But in the present case, nothing is more apparant than that there was  nothing in the accompanying circumstances, proved or offered to be proved, tending to show, that the defendant could reasonably have expected the hearers to understand his words in a sense different from their natural import. In only one instance, did he allude to the transaction, out of which he alleged the theft arose, and then, in no manner calculated to induce any doubt, whether the plaintiffs were, in fact, guilty of theft.   It is quite as easy to steal a " bed-tick," as any other thing.   The terms he used were not of doubtful import.   The condition of the property was not such that theft could not be committed upon it.   He neither had any right to expect that those who  heard him, knew, nor did they, in fact, know, any such matters in  relation to his

ADDISON,
*January,*
1843.

charge, as would induce them to consider that the defendant did not intend to charge the plaintiffs with literal theft.

In regard to the testimony, as tending to mitigate the damages, it was competent, in that view, if it had any such tendency, beyond that which was given to it; but the court think it had not. There was nothing tending to show that the defendant could, at any time, have supposed the plaintiffs intended, secretly and feloniously, to appropriate the bed-tick.

Judgment affirmed.