## Zimmerman *versus* Zimmerman.

</div>

1. When a will duly executed is offered for probate the law presumes competency in the testator, and that his unconstrained desire in regard to the disposition of his property is expressed in the instrument.

2. Such presumption may be rebutted by showing that the will was obtained by fraud and imposition practised on the testator, or by duress or undue influence; but the influence must be such as to destroy free agency in the testator.

3. A testator devised to his two sons certain of his lands subject to certain annual payments. On the same day he executed to his said two sons a lease of certain of his real estate from the date thereof for and during his own life and of that of his wife or of the survivor, they to pay to him or his wife, if surviving him, an annual rent, &c. In his will he directed that the said agreement or lease should remain and continue in force after his death; and if his wife survived him, until after her death, and she to receive the rents, &c., in lieu of her dower. He also directed that if his wife survived him, his will should not take effect *until the time of her death:*

In an issue of *devisavit vel non* it was *Held* that the lease and will were not inconsistent with each other; that the fee vested in the devisees on the death of the testator, though the time of enjoying the possession was limited upon the death of the wife; and meanwhile the possession was to be held under *the lease.*

4. The attachment by the register of a survey or draft of the devised land to the will, in making up the papers to be sent with the direction of an issue to the Common Pleas, did not invalidate the will. The survey was no part of the will.

ERROR to the Common Pleas of *Berks county.*

This was a feigned issue in which Daniel and Abraham Zimmerman were plaintiffs, and John Zimmerman was defendant, directed to try the validity of an alleged will of Isaac Zimmerman. The plaintiffs were the executors of the will, which was dated the 11th June, 1850.

On part of the plaintiffs, the subscribing witnesses to the will were examined as to its execution, and the capacity of the testator.

The admission of the will was objected to, because it referred to a written agreement between the decedent and his sons; because the widow of the testator was alive; and because among the papers transmitted from the register, and attached to the alleged will, were two drafts of the lands of the decedent. The will was admitted. The drafts were not offered in evidence.

The written agreement was then produced in evidence, and the plaintiffs rested.

On part of the defendant was then offered evidence, by which he attempted to prove the want of a sound disposing mind and memory in the decedent; and also duress.

On part of the plaintiffs was then given testimony with the view of establishing competency in the decedent to make a will, and the absence of constraint.

The defendant's counsel requested the Court to charge the jury,
—1. That the paper writing, purporting to be the will of Isaac Zimmerman, was not a valid will, because—

First,—It is not a will complete in itself, but refers to an agreement between him and his two sons, which has no testamentary character, and cannot be proved as a will, and directs that that agreement shall be and remain in full force after his death; if his wife survive him, until after her death, &c.; and the widow did survive her said husband.

Secondly,—The said paper writing orders that if Mary, the wife of Isaac Zimmerman, should survive him, that his will should not take effect until after her death.

2. The survey is improperly attached to the will, and the will is therefore void.

3. If the jury believe that the said Isaac Zimmerman was a feeble, easy, good-natured man, and was influenced contrary to his wishes to make such a will, it is not valid as a will.

In the will, the testator devised to Daniel Zimmerman, his son, a certain tract of land, of about 100 acres, at a sum of $8000, to be paid in 27 annual payments, &c.

To *Abraham*, his son, he devised two other tracts of land, containing about 100 acres, at the sum of $8000, in the same number of annual payments.

It was directed, in the *seventh* clause of the will, that the agreement made between the testator and his two sons, Daniel and Abraham, bearing the same date as the will, should remain and continue in full force after his death; if his wife survived him, until after her death; and that she should receive the rents and covenants therein set forth in lieu of her dower.

In the 8th clause it was directed that if his wife survived him, his will should not take effect "until the time of her death." His two sons were appointed executors.

By the agreement or lease referred to, dated 11th June, 1850, the testator leased to his said two sons, Daniel and Abraham, a tract of land containing 200 acres (being the same land devised), to hold the same from the date of the agreement during the lifetime of the testator and his wife, or the survivor, at the yearly rent of $200, to be paid to the lessor during his life, and to his wife after his death, if she survived him; the lessees were to occupy subject to other conditions stated in the will. The witnesses to it were the same persons who were witnesses to the will.

[Zimmerman v. Zimmerman.]

JONES, President J., charged :—" The theory of the defence is that Isaac Zimmerman was a feeble, easy, good-natured old man, and was influenced contrary to his wishes to make this alleged will, and that therefore, it is not a valid will.  *It is not every influence exercised over a testator that vitiates his testament, even though that testament may be contrary to his wishes in many particulars.  The influence of a wife, for instance, the result of a long life of devotion to her husband's happiness, may be exercised in giving a direction to his disposition of his property, and that disposition may be at variance with the judgment and wishes of the husband, yet there would be nothing in that to invalidate his will.* Persons standing in those near and dear relations are allowed to exercise the influence they acquire.  That influence must not, however, destroy the free agency of the testator.  His will must be the expression of a free will.  The influence may give direction to, may lead the testamentary disposition, but must not control it.  The law is expressed very forcibly upon this subject in Browne v. Molliston, 3 Wharton 129; and in Small v. Small, 4 Greenl. Rep. 223, from which the true rule is to be deduced.  It is for the jury to apply these principles to the facts of the case.

" The will is not invalid for the reasons suggested in the first and second points of the defendant."

Verdict was rendered for the plaintiffs.

Error was assigned to the part of the charge between asterisks. 2d and 3d.  In not charging as requested in the *first* point.  4th and 5th.  In not charging as requested in the 2d and 3d points. 6th.  In admitting in evidence the will, the admission of which was objected to, 1. Because certain drafts were annexed to it without authority; 2. Because it referred to the agreement; 3. Because it was not to take effect until the death of the widow, and she was still living.

*Davis, Banks,* and *Sallade,* were for the plaintiff in error.

*Strong,* for defendants in error, the Court declined to hear.—It was alleged in the argument that on the trial it was not alleged that the testator had been influenced by *his wife* in making the will, but by *his sons,* and that the third proposition to the Court related to that allegation.  It was alleged that no evidence was given in the case of any influence exercised by the widow or the devisees, or any other person, upon the testator in relation to the will.  It was therefore alleged that if the charge were inaccurate on this subject, it would not avail the plaintiff in error: 10 *Barr* 363.  It was however said that the answer of the Court to the point was correct: 3 *Ser. & R.* 269; 3 *Denio* 37; 3 *Whar.* 129;

4 *Greenl.* 223, Small *v.* Small; 1 *Richardson* 80; 3 *Strobh.* 44; *Id.* 552; 5 *Id.* 167; 2 *Greenl. Ev.* 688.

The agreement was merely a lease during the life of testator or his wife; and on the death of the testator, during the life of his wife, the devisees would take subject to the lease. The argument on the part of the plaintiff in error as to uncertainty, &c., is confounding the taking effect of a will with the vesting in possession of an estate given by it.

As to the fourth error. When the register sent his *precipe* for a feigned issue, he attached together the *precipe*, the alleged will, and two drafts of the land of the testator, which had been left in his office. They were drafts of the parts of his lands which the testator had given to his sons. They were on separate papers and were not offered as parts of the will, and were no part of it. The lands devised were according to the drafts.

The opinion of the Court was delivered by

WOODWARD, J.—When a will duly executed is offered for probate, the law presumes competency in the testator, and that the instrument expresses his free and unconstrained wishes in regard to the disposition of his property. This presumption may be rebutted by showing, to the satisfaction of a jury, that the will was obtained by fraud and imposition practised on the testator, or by duress, or by undue influence. What constitutes undue influence, is a question which must depend very much on the circumstances of each case. It is in its nature one of those inquiries which cannot be referred to any general rule. Yet many principles have been settled by judicial decision which, properly applied, afford in most cases an adequate guide to a right decision of the question. Thus one has a right by fair argument and persuasion to induce a testator to make a will in his favor: Miller *v.* Miller, 3 *Ser. & R.* 267. And it is not sufficient to set aside a will to show declarations of the testator that he intended to make a different one, but that his wife had a high temper and interfered: Moritz *v.* Brough, 16 *Ser. & R.* 403. If a wife by her virtues has gained such an ascendancy over her husband, that her pleasure is the law of his conduct, such influence is no reason for impeaching a will made in her favor, even to the exclusion of the residue of her family; though if that influence was specially exerted to procure the will in question, it might be sufficient to impeach it: Small *v.* Small, 4 *Greenleaf* 220. Threats and flattery, which induce and coerce a testator to subscribe and execute the will, furnish sufficient ground for setting it aside: Denslow *v.* Moore, 2 *Day* 12. A degree of importunity which deprives a testator of his free agency, which he is too weak to resist, and which renders the instrument not his free and unconstrained act, will invalidate a will: Davis *v.* Calvert, 5 *Gill & Johns.* 269. But the influence exercised must be such as

to destroy free agency. Unless the jury are satisfied that such mental force has been exercised as prevented free agency, the influence exerted is not to be considered improper: Browne *v.* Molliston, 3 *Wh.* 138. To the same effect is the rule as laid down in *Greenleaf's Ev.* vol. 2, sec. 688, where it is said that undue influence is not that which is obtained by modest persuasion, or by arguments addressed to the understanding, or by mere appeals to the affections; it must be an influence obtained either by flattery, excessive importunity, or threats, or in some other mode by which a dominion is acquired over the will of the testator, destroying his free agency, and constraining him to do, against his free will, what he is unable to refuse.

From these authorities it results that the presumption of unconstrained competency is not destroyed by showing that the testator was a feeble, easy, good-natured old man, in connexion with such other facts as were in evidence in this cause. Such a man, whatever his age, may possess a sound and disposing mind and memory, and whoever undertakes to show that he did not exercise it, must produce higher and more decisive proof than we have on this record. Without discussing it in detail, we are of opinion that it fell far short of that degree of proof which is required to exclude a will from probate. The plaintiff in error has no reason, therefore, to complain of the charge of the Court.

The next question relates to the effect of the lease executed by the testator to his two sons on the same day he made his will, and which is referred to therein. The lease took effect from its date, the will only from the death of the testator, the last clause of which is in these words,—" It is my will that if my wife Mary shall survive me, that this my will shall not take effect until the time of her death." Mary survived her husband, and it is argued that the lease under these circumstances worked a complete revocation of the will,

1st. Because of the uncertainty how long the wife would live.

2d. Because a will must take effect if at all at the death of the testator.

3d. Because it is inconsistent with the whole scope and design of the testator that the agreement should take effect and the will also—they cannot stand together.

It must not be forgotten that the issue here is *devisavit vel non* —will or no will—not what its effect and meaning. The question is upon the *existence* of a will, not its *construction.* The two papers cannot be regarded as constituting one will, because one of them is a contract to which the sons are parties as much as the testator. The lease is no more the will of the father than it is of the sons. For the same reason they do not fall within the rule that renders inconsistent wills of the same date void for uncertainty.

[Zimmerman *v.* Zimmerman.]

Did, then, the testator mean to revoke and annul his will as soon as it was made ? It is impossible to believe it. Having provided for the support of his wife by the lease in the event of her surviving him, he doubtless meant that the sons should hold the land under the lease whilst she lived, and then should take it under the will, or, in other words, that they should take the land subject to the lease.

Now it is true that after a will is executed, a conveyance of the *whole* estate devised revokes the will—a conveyance of part revokes it *pro tanto :* Marshall *v.* Marshall, 1 *Jones* 430; Balliet's Appeal, 2 *Harris* 460. But a *lease* leaves in the testator an interest to pass under the will, and where no intention to revoke is apparent, nay, where the intention that both lease and will shall stand, is expressed, there is no ground for treating the will as revoked. However difficult it may be to execute it, whatever embarrassments may be encountered in its construction, it is, notwithstanding, a good will and worthy to be proved. The will took effect from the death of the testator, so far as it could, and the limitation expressed was no more than saying that the will should not repeal the lease, but that during her life the wife should have the rent reserved in the lease, instead of dower at law. The fee vested instantly under the will—the time of enjoying it in possession was limited upon the death of the wife—meanwhile the possession was to be held under the lease. All that needs to be decided now is, that this arrangement left the will a provable instrument.

The only point that remains to be noticed, relates to the survey. The plaintiff in error insists that this was improperly attached to the will, which we believe is true; but we do not agree that the will was therefore void, for it seems it was attached by the register in making up the papers to be sent with the issue into the Common Pleas. It was not given in evidence as part of the will, and it is not to be recorded as such. Its tactual annexation to the will by the register was an unnecessary but harmless act.

The judgment is affirmed.