ROBERT H. SMITH *et al. v.* HIEL HOLLISTER.

*Evidence. Pleading. Variance. Slander. Partnership. Jury.*

An association of individuals in trade, under the name of the New England Protective Union, Division No. 230," brought an action for slander against H. On the trial, H., for the purpose of proving that B., one of the plaintiffs of record, was not a member of the association, offered in evidence a written admission to that effect, drawn up by H.'s attorneys in the case, signed and sworn to by B.; *Held*, that it was admissible.

The plaintiffs, to rebut evidence introduced by the defendant tending to prove that W., another of the plaintiffs of record, was not a member of the association, offered a paper signed by the wife of W., in his name; it did not appear that it was signed by her with the assent or knowledge of W., her husband, though it did appear that when the paper was first drawn, W. refused to sign it. This paper, it appeared, was used by her for the purpose of withdrawing from the association the eight dollars (the sum required to be paid by members on joining it,) which she had previously paid in, and with it an order was obtained for the withdrawal of the money; *Held*, that the paper was inadmissible.

The defendant's evidence tended to show that B. and W. were not members of the association; evidence tending to show that they were members was introduced by the plaintiffs; *Held*, that it was properly submitted to the jury, as a matter of fact, to determine whether or not they were members, and that in determining the question, their intent and understanding in relation thereto, at the time they were alleged to have become members, as gathered from the evidence, was a material consideration for the jury.

Averments were introduced into the declaration of words spoken by the defendant·imputing dishonesty to L., the name of L. being followed by the *innuendo*, "meaning the plaintiff's agent and clerk;" but there was nothing

else in the declaration showing any connection between L. and the plaintiffs ; *Held,* that in the absence of a direct averment connecting L. with the plaintiffs, or their business, the words alleged to have been spoken concerning him were not actionable in favor of the plaintiffs.

To maintain an action for slander, the substance of the alleged charge must be proved in substantially the same words laid in the declaration. Any mere variation in the form of expression only, is not material, but the words alleged cannot be proved by showing that the defendant expressed the *same meaning* in different words. It is not necessary, however, to prove all the words laid, unless the omission of those not proved would so vary the meaning of the others as to make the charge as proved a different one from that alleged.

CASE for slander. The substance of the several counts of the declaration was, that at the time of the committing of the grievances therein mentioned, the plaintiffs were merchants, doing business in Pawlet, under the name of the " New England Protective Union, Division No. 230," and that the defendant, on the 27th day of August, 1855, and on divers days between that time and the commencement of this suit, to injure them in their business and credit, falsely and maliciously said of them, " Division No. 230 (meaning the plaintiffs) must run under at least two thousand dollars; they must run out; I will use them up ; they owe at least eighteen hundred dollars in Boston, and as much in New York ; O. H. Simonds (meaning one of the plaintiffs) is not worth anything, and Horatio Hollister (meaning one of the plaintiffs) is not worth much, and he (the defendant) did not consider said Division safe ; it (meaning the plaintiffs' store) will be shut up ;" that on the day and year aforesaid, the defendant spoke certain other false and malicious words of the plaintiffs, that is to say, " the Division (meaning the plaintiffs' store) is attached and closed, and they (the plaintiffs) are not doing business now, and Lincoln (meaning the plaintiffs' agent and clerk) is not fit to be trusted with any business, and has not an honest hair in his head, nor an honest thread in his clothes, and the whole business (of the plaintiffs) is conducted dishonestly ;" that on the day and year above mentioned, the defendant also falsely and maliciously spoke of the plaintiffs as follows : " the Union Store (meaning the plaintiffs') cannot borrow twenty dollars of any one ; they cannot pay their debts ;" that on the

same day and year, the defendant spoke other false and defamatory words concerning the plaintiffs, as follows: "the store (meaning the store of the plaintiffs) will fail, and they (meaning the plaintiffs) cannot get trusted in market a dollar; they are cheating the people that traded with them; they are bankrupt, and Lincoln (meaning the plaintiffs' agent and clerk) is a scoundrel, and always was, and would play a trick on the people at the last end; they (meaning the plaintiffs) are bankrupt; they (meaning the plaintiffs) are cheating the people, and it (meaning the plaintiffs' firm) is a dishonest concern."

On the trial, by jury, at the September Term, 1859,— ALDIS, J., presiding, — the plaintiffs introduced evidence tending to show that, at the time the defamatory words set forth in the declaration were spoken, they were owners of a store in Pawlet, and were trading under the name and style of the "New England Protective Union, Division No. 230," together with proof of the uttering and publishing of the slanderous words alleged. The evidence tended to prove that the defendant said, "Division 230 must fail; I know it is so; they can't get trusted a dollar: the company is a bankrupt; they can't pay their debts; the company is a dishonest, rotten concern." Evidence was also given to prove the words spoken, as follows: "the store is involved, and in debt in New York and Boston; I am on a note for them and have requested my name to be taken off; they must eventually come down; they cannot borrow money; the store is unable to pay its debts." Also, evidence tending to prove that Hollister said, "that the store was the rottenest, dishonestest piece of business ever invented; that the company was not good for anything; Ossian Simonds was not worth a dollar if his debts were paid; Horatio Hollister had more ways for his money than to have any in the store; they were owing a large amount below, and the store must fail; it was a rotten concern; they were insolvent and bankrupt; the Uinon store could not pay its debts, and could not get trusted below; the Union store was a rotten, dishonest and unsafe concern; they were owing a good deal of money in Boston and New York, and a note for five hundred dollars on which his name was, and they trusted everything to their agent; that through the management of their

agent they must fail up; that the Union Store must close; the banks would not give them credit, and individuals would not trust them." Evidence was also introduced tending to prove the speaking of the words imputing dishonesty to Lincoln, which, under the decision of the court, it is unnecessary to repeat.

The defendant denied the speaking of the words, and gave evidence tending to show that he did not speak them; and also gave evidence tending to show that Gerry Brown and Artemas Wilcox, two of the plaintiffs of record, were not members of the Union, although it was conceded that Brown traded at the same rates as members of the firm, who, it appeared by the rules of the association, were to be, and who were, charged a less price than persons not members. The defendant offered the statement of Brown, to the effect that he never was a member of the firm, drawn up by one of the attorneys of the defendant, and signed and sworn to by Brown, which was objected to, but admitted by the court.

The evidence as to whether Brown and Wilcox were members of the association, is sufficiently stated in the opinion of the court. The plaintiffs, to rebut the defendant's evidence in relation to Wilcox, offered a paper which, it appeared, was signed by the wife of Wilcox, but it did not appear that it was signed by her in his presence, or with his consent or knowledge, though it did appear that, when the paper was first drawn, Wilcox refused to sign it, and said he had done nothing to get into the company and would do nothing to get out of it; afterwards, it was signed by the wife, in the name of her husband, and Wilcox's son said he took the paper, by his mother's direction, to the clerk to obtain an order for the withdrawal of the money, (which had been paid in by her) which order was obtained with the paper; and the same witness stated that he did not know that his father knew of the signing of the paper, and that his father would not assent to its being signed. On this evidence the paper was excluded by the court, and the plaintiffs excepted.

The first and second constitutions, or articles of association, were introduced in evidence, and evidence was given to show that, on the adoption of the second constitution, none of the members signed it, and that the signing was practically dispensed

with.   The material portions of the constitutions are recited in the opinion of the court.

The court charged the jury, as to the slanderous words laid in the declaration and the evidence to sustain them, that the allega- tions as to Lincoln, and the evidence tending to prove them, ought not to be considered by the jury in assessing damages, as there were no averments in the declaration sufficient to connect him with the plaintiffs, so as to make the words spoken of him become slan- der of the plaintiffs ; that the only words alleged in the declaration which the evidence tended to prove, and which were so connected, by a proper colloquium or averments, with the plaintiffs as to make them actionable, were the following: "they cannot pay their debts;" "they are bankrupt;" "it is a dishonest concern;" and as to these words alleged in the declaration, it was not necessary for the plaintiffs to prove the very form of expression, the identical words laid; it was enough if the plaintiffs proved the substance of the alleged slander, if the words as proved, though not the very ones laid in the declaration, conveyed the same idea, the same and no other meaning; and upon this point they should consider the evidence tending to show that the defendant had said of the plaintiffs, as partners and merchants, "the company is bankrupt and cannot pay their debts ; the company is a dishonest and rotten concern; they are unable to pay their debts ; they are owing more than they can pay; the store is unable to pay its debts ; the company is not good for anything; the store was the rottenest and dishonestest piece of business ever invented; that they were insolvent," and other similar expressions ; and if they found that the defendant had in substance spoken of them the slanderous words laid in the declaration, and which the court had already stated were actionable, then this point would be made out for the plaintiffs ; but that unless the words so alleged, or the substance of them, were proved by the plaintiffs, they could not recover; that if proved, the jury might then consider the evi- dence of the other slanderous language as tending to show mal- ice, and so to enhance the damages, but for no other purpose.

The court also charged the jury that they must find *all* the persons, as alleged in the declaration, to have been partners, or the plaintiffs could not recover ; and that if either Brown or

Wilcox was not a partner, the action must fail; that the association entered into, as shown by the constitution and the other testimony, for the purpose of buying and selling goods, was a partnership; that in order to show a partnership between the plaintiffs, to sustain this action, they must show that the plaintiffs and all of them were partners as between themselves, and that they had agreed to become members of the firm, or association, called the "New England Protective Union, No. 230 ;" that it was not necessary that they should understand all the liabilities they might eventually incur by entering into the contract, nor that they should call their contract by the name of a partnership ; but they must agree to become members of the association in order to make their contract a partnership ; that if Brown and Wilcox did agree to become members of the N. E. Protective Union, No. 230, and did, in fact, by their agreement and understanding, so become members, then on this point the plaintiffs sustained their action ; but that if either of them did not so become a member of the association, then the action must fail ; that this was a question of fact for the jury to determine from the evidence, and if the jury were satisfied that Brown and Wilcox respectively understood that they were members, or that they must, as reasonable men, have so understood it from what they respectively said and did, and what was said and done to and with them by the company, in regard to becoming and being members, then the action as to this part of the defence was sustained.

As to damages, the court charged that if the jury found actual malice in the defendant, and that from this malice he uttered the slanders with intent to injure the plaintiffs in their business as merchants in company, then the jury could give exemplary damages.

To the portions of the charge above stated the plaintiffs excepted. The court gave such further instructions as the case required, to which no exceptions were taken.

Verdict for the defendant.

F. Potter and D. E. Nicholson for the plaintiffs.

1. The written admission of Brown should have been rejected,

for the reason that Brown himself was a competent witness, and because all the reasons that forbid the attorney in a cause from writing a deposition designed for use in such cause, weigh with equal force against admitting the paper in question.

2. The court, instead of excluding altogether the paper signed by Wilcox's wife, should have admitted it with proper instructions to the jury as to the facts it would be necessary for them to find, in order that the paper should be allowed to affect the issue.

3. The words spoken of Lincoln should not have been excluded from the consideration of the jury, as the declaration is not defective in the particular essential to make the words admissible.

4. The court should have fairly recapitulated the testimony on the question of whether, or not, Brown and Wilcox were members of the company, and instructed the jury as a matter of law, in the light of the facts left for them to find, whether the facts, if found, would constitute them members ; and not have left it to the jury, *as a question of fact,* whether they were members.

5. The court charged the jury that the only words actionable, which the evidence tended to prove, were the following : "they cannot pay their debts ;" "they are bankrupt ;" "it is a dishonest concern." The plaintiffs contended that there were other words in the declaration actionable, which were supported by the evidence : as, "they must run out ;" "it will be shut up ;" "he did not consider the Division safe ;" "the store will fail ;" "they cannot get trusted in market a dollar ;" "O. H. Simonds is not worth a dollar ;" which were supported by the evidence. "Division 230 must fail ;" "they must eventually come down ;" "they must fail up ;" "the Union Store must close ;" "they cannot get trusted a dollar ;" "they could not get trusted below ;" "they could not borrow money ;" "Ossian Simonds was not worth a dollar if his debts were paid." Any words that have a tendency to injure the business or credit of a tradesman are actionable. Bacon's Ab. Title, "Slander." And it is sufficient to prove some of the words laid, provided those omitted do not alter the sense. Starkie's Ev., Vol. II, p. 848. Chitty's Pl. 405.

6. Brown and Wilcox were members of the association on the facts proved. The court should have charged the jury, that if

they paid in the eight dollars, enjoyed the privilege of the association and received a certificate of membership, they were members. It is entirely immaterial whether they understood that they were members or not.

*H. Allen,* for the defendant.

1. The admission of one of several joint plaintiffs is always receivable in evidence; and the rule is not varied by the fact that the admission was drawn up by one of the attorneys of the defendant. *Brown* v. *Munger,* 16 Vt. 13. *Campbell* v. *Dewey,* 16 Vt. 538.

2. The paper signed by Wilcox's wife was properly rejected. It was not signed with the assent or knowledge of Wilcox, or by any agent authorized to execute instruments of that character.

3. In order to make the words spoken of Lincoln defamatory of the plaintiffs, and so entitled to be considered by the jury, the declaration should have alleged that the plaintiffs had knowledge of the dishonesty imputed to their agent. Stephen's *nisi prius,* 2562 and 2539, note *v.*

4. There is no mention in the declaration, except by way of *innuendo,* that Lincoln was agent and clerk of the plaintiffs. There is no legal averment to that effect. Words imputing dishonesty to him are, therefore, no more defamatory of the plaintiffs than words imputing dishonesty to any other person. Stephen's *nisi prius,* 2568, 2570; 1 Chitty's Pl. 407; 1 Aikens, 33; 12 Vt. 51; 13 Vt. 42; 14 Vt. 462.

5. The charge of the court as to what was necessary to constitute Brown and Wilcox partners with the remaining plaintiffs, was correct. Collyer on Part. 2; 10 Vt. 170.

6. The only words in the declaration which the evidence tended to prove, and which were so connected with the plaintiffs, by proper colloquium or averments, as to make them actionable, were the following; "they cannot pay their debts;" "they are bankrupt;" "it is a dishonest concern." As to variance see 1 Chitty's Pl. 405; Stephens *nisi prius,* 2575.

POLAND, J. I. The written admission or affidavit signed and sworn to by Brown, one of the plaintiffs, was correctly admitted as evidence. He was one of the plaintiffs of record, and, for aught

that appears a party in interest equally with the other plaintiffs.

The proper weight to be given to the paper as evidence of the facts stated in it, was wholly a question for the jury, and if the fact that it was drawn up by the defendants' attorney had any tendency to induce a belief that it was unfairly obtained or was not a fair and truthful statement, all this was proper matter of argument to the jury as to the amount of evidence the paper furnished.

II. The paper offered by the plaintiffs, signed by the wife of Wilcox, one of the plaintiffs, was properly excluded. It was not signed by him, and the evidence was that, when presented to him, he refused to sign it. There was no evidence that he assented to his wife's putting his name to it, or that he knew it even, but there was evidence that he did not assent. It does not appear that he assented to the paper being used in any way, for any purpose. How under this evidence it could be claimed that this paper was admissible as an act or admission by, or authority from, Wilcox, seems to us beyond conjecture. This paper has not been shown us, but from the exceptions seems to have been made by Mrs. Wilcox, to enable her to withdraw the eight dollars she had paid into this Union Store, without the consent and against the direction of her husband.

III. It is claimed that the charge was not correct upon the evidence in relation to whether Brown and Wilcox, two of the plaintiffs, were really members of the division or partnership. The general rule of law laid down by the court, that if they were not shown to be members of the division, the action could not be maintained, is not questioned, but it is claimed that the charge should have been specific, that upon the facts proved, and which were not denied by the defendant, those persons were members of the firm or division.

To determine this it is necessary to see what was required to make one a member, and what was in fact done. The first constitution provided as to membership as follows: "Any person of good moral character who shall subscribe this constitution and pay to the treasurer the sum of eight dollars, may become a member of this division, and be entitled to all its privileges and benefits."

The second constitution provided for admission of members as follows: "Any person, with the consent of a majority of the

members who shall pay to the directors eight dollars and sign this constitution, shall be a member of this division, and shall receive a certificate of membership signed by the president and secretary, and be entitled to equal privileges and benefits." Each constitution contained a provision allowing members to withdraw at the end of any year by giving previous notice, and each also provided that members should have goods at five per cent. less than they were sold to persons not members. The above provisions are substantially all that is provided as to the manner of becoming members, their privileges while members, and their right of withdrawing from the division.

The evidence as to Brown was, that he never signed either constitution, but he paid eight dollars to Lincoln, the agent of the division, and requested him to present his name at the first meeting as an applicant for admission as a member ; that Lincoln presented his name either at a meeting, or to the directors, and was directed to give Brown a certificate of membership, which he did, and that Brown was afterwards allowed to trade as a member. These facts certainly tend very strongly to prove that he became a member of the division. On the other hand, the defendants' evidence tended to prove that when Brown paid the eight dollars to Lincoln, it was understood between them that Brown was not to become a member of the division, but that he paid the eight dollars upon the consideration that he was to be allowed to have goods at members' prices.

If this was the whole effect of the arrangement it clearly would not constitute him a member, even if Lincoln exceeded his authority or violated his instructions in making it.

The plaintiffs' counsel insists that it is wholly a question of law, whether an existing joint arrangement between two or more persons constitutes a partnership, and does not depend upon the intent or even upon the agreement of the parties, and to a certain extent this is true. If two or more persons join their funds in an enterprize in which they are to share in the profit or loss, the law declares it a partnership, even though the parties have expressly agreed that it shall not be so. But here the question was, not what should be the legal effect of his becoming a member, but whether he ever became a member, and entitled to a

division of profits.   This was a question of fact, to be determined by the jury, and like any other case, when it is in dispute whether a contract has been made, the intent and understanding of the parties was a material consideration for the jury.   None of the facts proved by the plaintiffs were legally conclusive that Brown became a member of the division.   They tended to prove that he did ; the defendant's evidence tended to prove that he did not, and it properly belonged to the jury to decide the question whether he became a member or not.   Wilcox signed the first constitution, but it was not claimed that this alone constituted him a member, as he refused to pay the eight dollars.   Afterwards his wife paid the eight dollars, and he and his family were then permitted to trade at the same prices as members, and the plaintiff's evidence tended to prove that he attended the meetings of the company

The defendant's evidence tended to prove that the payment of the eight dollars by Mrs. Wilcox, was against the express direction of her husband, and if this was so, it could not have any legal effect upon him ; his wife could not make him a member of the company against his will.   The evidence of his attending the meetings, and trading at the store at members' prices, was evidence tending undoubtedly to prove a subsequent assent and approbation of this payment but not conclusive.   It all terminated in a question of fact for the jury, whether he became a member or not.   The county court left it to the jury to find whether these persons were members of the firm, and no objection is now made to any part of the charge as detailed, on this part of the case, but they claim the instructions should have been more specific.   It does not appear that any specific instruction was asked which was refused, and exceptions were taken merely to that part of the charge stated.   The case stated that the charge, except such as is given, was satisfactory.  We are to assume that in reference to the details of the evidence and the proper effect of each part of it, the charge was satisfactory.

IV.  The court below correctly laid out of the case all that was alleged in the declaration, or proved on the trial, in reference to the defendant's statements against the character of Lincoln. The action is brought to recover damages for a slander of the plaintiffs' firm, as a mercantile house, for words tending to injure

46

their mercantile credit, and character as fair dealers. Whether words imputing dishonesty to their clerk could be actionable in favor of the firm, without charging that it was known or approved by the firm, it is not necessary to decide at this time. The difficulty with the plaintiffs' case in this respect is, that nothing appeared properly upon the declaration but that Lincoln is a mere stranger to them, wholly unconnected with their affairs or business. If he was so connected with them, or their business, that charges of dishonesty against him would injure the credit or character of their firm, this should have been distinctly set forth by a distinct introductory averment. The statement of the words in the declaration relative to Lincoln, is followed by an innuendo (meaning the plaintiffs' agent and clerk,) but this is no averment of the fact. The authorities on the subject of declarations in slander, and the respective offices of introductory averments, or *colloquiums*, and of innuendoes, are all in harmony, but I have found them nowhere stated more concisely and clearly than by ROYCE, J., in *Fitzsimmons* v. *Cutler*, 1 Aik. 33. "There is a material distinction in a declaration of this sort between an inducement, introduction or colloquium, and an innuendo. The office of the former is to set forth the occasion and circumstances of the publication, and to allege all extrinsic facts which are necessary to be taken in connection with the words spoken, in order to complete the sense; while the latter has no other use than simply to ascertain the application of previous expressions to particular persons or things.

"It means no more than the words *id est, scilicet,* or *meaning* or *aforesaid,* as explanatory of a subject matter sufficiently expressed before, as such an one, meaning the defendant, or such a subject, meaning the subject in question. But as an innuendo is only used as a word of explanation, it cannot extend the sense of the words spoken by the defendant beyond their own meaning, unless something is previously put upon the record for it to explain. Hence it is universally agreed that if words spoken are not actionable, with a mere explanation of the persons or things intended by them, they cannot be made so by an innuendo, for an innuendo is only a word of explanation, and never of addition or extension."

V. The only other point upon these exceptions reserved, is in reference to the charge of the court to the proof of the speaking the words laid in the declaration. The court charged the jury that it was not necessary for the plaintiffs to prove the very form of expression, the identical words as laid; it was enough if the plaintiffs proved the substance of the alleged slander, if the words as proved, though not the very ones laid in the declaration, conveyed the same idea, the same, and no other meaning.

The authorities all agree that a declaration in slander to be good must profess to set forth the very words spoken by the defendant; it is not enough to allege generally that the defendant charged the plaintiff with the commission of a crime, as that he had committed *perjury* or *arson.*

This was decided in this State in *Hazelton* v. *Weare,* 8 Vt. 480. So in a plea of justification in slander the defendant must justify speaking the same words set out in the declaration; this was held in this State in the case of *Skinner* v. *Grant,* 12 Vt. 456.

From these well established doctrines as to declaring and pleading in these actions, it would seem on principle necessary, when the plaintiff is called upon to support his declaration by proof, that he should prove the words precisely as alleged. This was the ancient rule in the English courts; 2 Selwyn's N. P. 1267, and cases cited in notes.

But from the great difficulty in actions for verbal slander in proving the words precisely as alleged, some relaxation in the rule on this subject has been allowed.

Mr. SELWYN says on the page above quoted that it is now " sufficient to prove the substance of the words." It is clear, however, from what follows that Mr. SELWYN does not mean that it is sufficient to sustain the charge by other language having the same meaning, but that the substance of the *same words* must be proved.

Mr. CHITTY states the rule as follows : " The plaintiff need not prove all the words laid, if they do not constitute one entire charge, and the non-proof would not alter its meaning; though he must prove such of them as will be sufficient to sustain his action, and it will not suffice to prove *equivalent expressions.*" In the American notes to SELWYN above cited it is laid down " that though all the words alleged need not be proved, it is necessary

some of those which are actionable should be proved as laid;" citing *Foster* v. *Small*, 3 Whart. 138 ; *Cumings* v. *Butler*, 3 Blackf. 190; *Wheeler* v. *Robb*, *Ib*. 330 ; *Whiting* v. *Smith*, 13 Pick. 364.

In another note on the same page, it is said, " but though the words proved are equivalent to those laid in the declaration, yet if they are not the same in substance, judgment will be arrested," and cites *Olmstead* v. *Miller*, 1 Wend. 506 ; *McAlmont* v. *McClelland*, 14 S. & R. 359.

In *Hazelton* v. *Weare*, above cited, ROYCE, J., says, "It is a rule laid down in all the books that in an action for slander the words constituting the slanderous charge must be set forth. And to avoid inconvenience from the strictness of this rule, some slight relaxation is permitted in the evidence. This need not correspond in every minute particular with the words as laid, provided the identity of the charge is substantially made out."

In *Smith* v. *Miles* 15 Vt. 245, REDFIELD, J., says, " The jury must find the speaking of the words as alleged, i. e. so many of the same words as go to constitute the sting of the charge." All these authorities seem to amount to the same thing, though expressed differently somewhat. All agree that it is not necessary to prove all the words laid, unless those not proved vary the sense and meaning of the others which are proved so as to make the charge proved a different one from that alleged. We think the true rule to be gathered from them all is that the substance of the alleged charge must be proved in substantially the same words laid in the declaration. That any mere variation in the form of expression merely would not be material, but that the words alleged cannot be proved by showing that the defendant expressed the same meaning but in different words. The language of the charge would admit of a more liberal and extended application than this, but probably was intended to be substantially as we now hold. If not, however, the plaintiffs cannot complain, as the error was in their favor. We need take no time to examine the particular application of the rule by the county court to all the different statements of the defendant proved. It is sufficient to say that in our judgment it was quite as liberal to the plaintiffs, as the rules of law would justify.

The judgment of the county court is affirmed.